ANITA P. ARRIOLA
JOAQUIN C. ARRIOLA
MARK E. COWAN
ARRIOLA, COWAN & ARRIOLA
259 MARTYR STREET, SUITE 201
AGANA, GUAM 96910
Telephone: (671) 477-9731/33
Telecopier: (671) 477-9734



FILED
DISTRICT COURT OF GUAM
APR 11 2007
MARY L.M. MORAN
CLERK OF COURT

Attorneys for Plaintiff Bank of Guam

IN THE UNITED STATES DISTRICT COURT
FOR THE TERRITORY OF GUAM

BANK OF GUAM,
   a Guam banking corporation,

             Plaintiff,

vs.

BANK OF HAWAII,
   a Hawaii banking corporation,

            Defendant.

CIVIL CASE NO. 07-00007

COMPLAINT FOR DAMAGES;
DEMAND FOR JURY TRIAL

## COMPLAINT FOR DAMAGES

Plaintiff BANK OF GUAM ("Bank of Guam"), by and through its attorneys, ARRIOLA, COWAN & ARRIOLA, hereby alleges as follows:

1. Bank of Guam is, and was at all times relevant herein, a Guam banking corporation duly authorized to do business in, and chartered by, the territory of Guam, whose principal place of business is 111 Chalan Santo Papa, Hagatna, Guam, 96910.

2. Defendant Bank of Hawaii ("BOH") is, and was at all times relevant herein, a banking corporation that is chartered in the State of Hawaii, and is duly authorized to do business in the territory of Guam.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1332(a) and (e). This is a matter between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest.

4.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a)(1) and (2).

## FACTS

### The IDS Transaction

5.  Jale Management Information and Data Services, Inc., dba Information and Data Services ("IDS") is a Guam corporation that provides payroll services to various customers in Guam.

6.  At all relevant times, IDS was an account holder at both Bank of Guam and BOH.

7.  At all relevant times, IDS engaged in transactions involving its accounts at Bank of Guam and BOH through the use of checks and automated clearing house ("ACH") transactions.

8.  ACH transactions involve the ACH network, which is a system used in interstate commerce to provide electronic funds transfers.

9.  ACH transactions are governed by rules and related guidance (the "ACH Rules") issued and administered by the National Automated Clearing House Association ("NACHA").

10. On or about September 28, 2006, IDS uploaded four items totaling $754,635.45, which were received by BOH on September 29, 2006. "Uploading" in the banking context means to send items for payment from a computer electronically to a bank. In this case, IDS used Bank of Guam's computerized cash management system to upload items to BOH.

11. On or about September 29, 2006, IDS uploaded four items totaling $751,001.15,

which were received by BOH on October 2, 2006.

12. On or about October 2, 2006, IDS uploaded four items totaling $768,269.99, which were received by BOH on October 3, 2006.

13. From September 28, 2006 to October 2, 2006, IDS uploaded a total amount of 2,273,905.50 ("the IDS Transaction").

14. BOH did not return any of the foregoing IDS Transaction items, and Bank of Guam credited IDS's account in the amount of $2,273,905.59. IDS immediately began drawing on the funds in its Bank of Guam account.

15. On October 3 and 5, 2006, Bank of Guam officials met with IDS officers to discuss irregularities in checks written by IDS. As a result of these meetings, Bank of Guam became concerned that IDS may be involved in a check kiting scheme involving IDS accounts with Bank of Guam and BOH. Bank of Guam officials immediately contacted BOH officials on October 5, 2006 to advise them of their concerns and notified them that any further transactions with the IDS accounts would create a loss to both banks.

16. Instead of working with Bank of Guam to prevent losses to both banks, on information and belief, sometime in October 2006 BOH determined to engage in a scheme to defraud Bank of Guam by utilizing the ACH network. BOH knew that if it returned the IDS Transaction items, the ACH network would automatically take the amounts for those items from Bank of Guam and credit such sums to BOH. BOH also knew that by fraudulently using the ACH network in this manner, Bank of Guam would suffer substantial losses.

17. In furtherance of BOH's fraudulent scheme, eight days after being notified of possible irregularities in IDS's accounts and of potential losses to Bank of Guam, on October 13, 2006 (Hawaii time) BOH returned the IDS Transaction items to Bank of Guam with a "Return

3

Code: R07 Revoked Authorization." The BOH returns were received by Bank of Guam on October 16, 2006 (Guam time). As a result of the BOH returns, the ACH network automatically took the funds from Bank of Guam and credited BOH in the amount of $2,273,905.59.

18. Under ACH Operating Rules ("OR"), for purposes of the IDS Transactions, IDS is both the "Originator" and "Receiver" for the transactions; Bank of Guam was the "Originating Depository Financial Institution" ("ODFI") and BOH was the "Receiving Depository Financial Institution ("RDFI").

19. Appendix Six, ACH OR 6.1.2 requires that "[e]ach return entry must comply with the requirements of Appendix Five (Return Entries)."

20. Appendix Five, ACH OR 5.4 defines a Return Code of "R07" as an "Authorization Revoked by Customer." ACH OR 5.4 requires that under an "R07" Return Code, the Receiver (IDS) must provide the RDFI (BOH) a written statement under penalty of perjury ("WSUPP") that the authorization for the debit entry has been revoked by the Receiver. Further, the WSUPP must be obtained by the RDFI (BOH) **prior** to initiating return of the items. ACH OR 8.7.5.

21. On October 16, 2006, after BOH returned the IDS Transaction items to Bank of Guam, Bank of Guam Vice President Josephine Mariano telephoned, James Polk, Pacific Islands Division Manager and Executive Vice President at BOH, to determine whether BOH had a WSUPP from IDS as required under ACH OR 5.4 and ACH OR 8.7.5. Polk admitted that BOH did not have a WSUPP, but that he "expected" to obtain one within ten days. Polk knew or should have known that any WSUPP procured **after** return of the IDS Transaction items would be untimely and ineffective to support such return. On the same day, Ms. Mariano contacted IDS President Romy Miclat and determined that IDS had not executed a WSUPP for BOH.

22. On October 16, 2006, Ms. Marianao wrote a letter to Polk, requesting that BOH provide a copy of any WSUPP provided by the Receiver (IDS) to the RDFI (BOH).

23. BOH has never provided a WSUPP to Bank of Guam.

24. Bank of Guam filed a complaint against BOH with the NACHA Compliance Department, alleging BOH's violations of ACH ORs 4.2, 6.1.2, 5.4 and 8.7.5.

25. On March 26, 2006, a NACHA panel determined that BOH violated the ACH Rules in not having a WSUPP as required under the ACH Rules. Bank of Guam did not receive a copy of the NACHA decision until April 3, 2007.

26. Sometime in October 2006, Bank of Guam demanded that BOH return the $2,273,905.59, but BOH has refused to do so.

### The Guam Hilton Hotel and Dewitt Transactions

27. At all relevant times, IDS provided payroll services to Davinci-RP Operating Lessee, Inc. dba Hilton Guam Resort and Spa ("GHH") and received payment from GHH to process the payroll of GHH employees.

28. At all relevant times, IDS provided payroll services to Dewitt Transportation Services of Guam, Inc. (Dewitt) and received payment from Dewitt to process the payroll of Dewitt employees.

29. On October 4, 2006, IDS uploaded an item to BOH in the amount of $17,362.03. On October 5, 2006, IDS uploaded three additional items totaling $92,250.56 to BOH.

30. The total amount of the four items uploaded to BOH was $109,612.59 ("the GHH and Dewitt Transactions"). BOH did not have any WSUPPs from GHH or Dewitt and did not return these items. Instead, BOH debited all four of the GHH and Dewitt Transaction items from the GHH and Dewitt accounts at BOH.

31. In furtherance of its scheme to defraud Bank of Guam, and after obtaining funds from its return of the IDS Transaction items, BOH again unlawfully utilized the ACH network to cause substantial losses to Bank of Guam.

32. On information and belief, on or about October 17, 2006, BOH induced a Dewitt representative to execute and deliver a WSUPP to BOH, purportedly to revoke Dewitt's authorization of "any and all **future** payments on October 17, 2006" for items drawn on Dewitt's account at BOH. (Emphasis added). BOH knew or should have known that at the time it was procured, such WSUPP was untimely and ineffective to support return of the GHH and Dewitt Transactions items.

33. On information and belief, on or about October 27, 2006, BOH induced a GHH representative to execute and deliver a WSUPP to BOH, purportedly to revoke GHH's authorization of "any and all **future** payments on October 20, 2006" for items drawn on GHH's account at BOH. (Emphasis added). BOH knew or should have known that at the time it was procured, such WSUPP was untimely and ineffective to support return of the GHH and Dewitt Transactions items. BOH also knew or should have known that such WSUPP was backdated in that it purported to affect transactions from October 20, 2006, yet was not executed until on or about October 27, 2006.

34. On October 23, 2006, BOH returned the first GHH and Dewitt Transaction item. On October 30, 2006, BOH returned the remaining three GHH and Dewitt Transaction items. BOH returned all four items using the "R07" Return Code, knowing that the WSUPPs from GHH and Dewitt were untimely and ineffective to support return of the GHH and Dewitt Transactions items.

35. BOH, with the intent to defraud Bank of Guam, returned the GHH and Dewitt

Transaction items using the R07 Return Code long after BOH had already debited the GHH and Dewitt accounts for these items.

36. BOH, with the intent to defraud Bank of Guam, used the GHH and Dewitt WSUPPs to support its return of the GHH and Dewitt Transaction items, despite the fact that the WSUPPs unambiguously revoked authorizations for "future" items, and not for the items that had already been debited by BOH. In addition, the GHH and Dewitt WSUPPs were invalid because GHH and Dewitt failed to give notice to IDS of the revocation, as required by ACH OR Subsection 2.1.2.

37. As a result of BOH's return of the GHH and Dewitt Transaction items, the ACH network automatically took $109,621.59 from Bank of Guam's account and credited that amount to BOH.

38. By engaging in a fraudulent scheme to return the GHH and Dewitt Transaction items after already debiting those accounts, BOH intentionally caused Bank of Guam to suffer a substantial loss of $109, 612.59.

39. Bank of Guam filed a Rules Violation complaint with NACHA on December 1, 2006 and demanded that BOH return the $109,612.59, but BOH has refused to do so.

## COUNT ONE – BREACH OF WARRANTIES (IDS Transaction)

40. Bank of Guam repeats and realleges the allegations contained in paragraphs 1 through 39 as if fully set forth herein.

41. By returning the IDS Transaction items with the R07 Return Code, BOH warranted to Bank of Guam that, prior to initiating the return of the items, BOH had obtained a WSUPP from IDS revoking the authorization for those items. ACH OR Subsection 8.7.5.

42. ACH OR 4.2 provides, among other things, that each RDFI warrants to each

ODFI that it will "comply with the requirements of these rules."

43. Bank of Guam justifiably relied upon BOH's warranties under the aforementioned ACH Operating Rules.

44. BOH breached the warranties it gave to Bank of Guam under ACH OR Subsection 8.7.5 and ACH OR 4.2, resulting in a loss to Bank of Guam in the amount of $2,273,905.50 and other losses to be proved at trial.

### COUNT TWO – FRAUD AND INTENTIONAL MISREPRESENTATION
### (IDS Transaction)

45. Bank of Guam repeats and realleges the allegations contained in paragraphs 1 through 44 as if fully set forth herein.

46. On October 13, 2006, by returning the IDS Transaction items with the "R07" Return Code, BOH, with intent to deceive and defraud Bank of Guam, represented to Bank of Guam that BOH had received a WSUPP from IDS prior to revoking authorization for the IDS Transaction items.

47. BOH's representations were false and BOH knew them to be false when they were made.

48. In truth and fact, BOH had not obtained any authorization from IDS prior to revoking authorization for the IDS Transaction items.

49. Bank of Guam believed and justifiably relied upon BOH's representations.

50. By reason of BOH's fraud and intentional misrepresentations, Bank of Guam suffered damages in the sum of $2,273,905.59 and other damages as may be proved at trial.

### COUNT THREE – CONVERSION (IDS Transaction)

51. Bank of Guam repeats and realleges the allegations contained in paragraphs 1 through 50 as if fully set forth herein.

52. On or about October 13, 2006, Bank of Guam was the owner and in possession of $2,273,905.59.

53. On October 13, 2006, BOH, in order to induce Bank of Guam to give credit to BOH in the amount of $2,273,905.59, falsely and fraudulently represented to Bank of Guam that BOH had obtained a WSUPP from IDS prior to revoking authorization for the IDS Transaction items.

54. Bank of Guam believed and justifiably relied upon BOH's representations.

55. BOH's representations were false and were known by BOH to be false when made, and were made by BOH to Bank of Guam with the intent to deceive and defraud Bank of Guam of its property.

56. BOH, after obtaining possession of the $2,273,905.59, unlawfully converted and disposed of the same to its own use, in derogation of Bank of Guam's ownership rights to said property, profiting and benefiting substantially from its wrongful conduct.

57. As a direct and proximate result of BOH's wrongful conversion of Bank of Guam's property, Bank of Guam has suffered damages in an amount to be determined at trial.

**COUNT FOUR – UNJUST ENRICHMENT (IDS Transaction)**

58. Bank of Guam repeats and realleges the allegations contained in paragraphs 1 through 57 as if fully set forth herein.

59. Bank of Guam is a participating "Depository Financial Institution" ("DFI") utilizing the ACH network. As a participating DFI, Bank of Guam agreed to be bound by, and to comply with, the ACH Operating Rules.

60. BOH is a participating DFI utilizing the ACH network. As a participating DFI, BOH agreed to be bound by, and to comply with, the ACH Operating Rules.

61. The ACH Operating Rules constitute an agreement between Bank of Guam and BOH.

62. On October 13, 2006, by returning the IDS Transaction items with the "R07" Return Code, BOH, with intent to deceive and defraud Bank of Guam, failed to comply with the ACH Operating Rules, in breach of the parties' agreement. As a result of BOH's breach of the parties' agreement, the ACH network automatically took funds from the Bank of Guam and credited BOH in the amount of $2,273,905.59.

63. BOH knew or should have known that its conduct was in violation and in breach of the parties' agreement.

64. Sometime in October and December 2006, Bank of Guam demanded that BOH return the $2,273,905.59, but BOH has refused to do so, and by its refusal has become unjustly enriched.

65. As a result of BOH's unjust enrichment, Bank of Guam has suffered damages in the sum of $2,273,905.59 and other damages as may be proved at trial.

**COUNT FIVE – BREACH OF WARRANTIES (GHH and Dewitt Transactions)**

66. Bank of Guam repeats and realleges the allegations contained in paragraphs 1 through 65 as if fully set forth herein.

67. ACH OR 4.2 provides, among other things, that each RDFI warrants to each ODFI that it will "comply with the requirements of these rules." By returning the GHH and Dewitt Transaction items with the R07 Return Code, BOH warranted to Bank of Guam that it had obtained valid WSUPPs from GHH and Dewitt. ACH OR Subsection 8.7.5.

68. Bank of Guam justifiably relied upon BOH's warranties under the aforementioned ACH Operating Rules.

69. BOH breached the warranties it gave to Bank of Guam under ACH OR Subsection 8.7.5 and ACH OR 4.2, resulting in a loss to Bank of Guam in the amount of $109,621.59 and other losses to be proved at trial.

### COUNT SIX – FRAUD AND INTENTIONAL MISREPRESENTATION
### (GHH and Dewitt Transactions)

70. Bank of Guam repeats and realleges the allegations contained in paragraphs 1 through 69 as if fully set forth herein.

71. On October 23, 2006 and October 30, 2006, by returning the GHH and Dewitt Transactions items with the "R07" Return Code, BOH, with intent to deceive and defraud Bank of Guam, represented to Bank of Guam that BOH had received valid WSUPPs from GHH and Dewitt prior to revoking authorization for the GHH and Dewitt Transaction items.

72. BOH's representations were false and BOH knew them to be false when they were made.

73. In truth and fact, BOH had not obtained valid authorizations from GHH or Dewitt prior to revoking authorization for the GHH and Dewitt Transactions items.

74. Bank of Guam believed and justifiably relied upon BOH's representations.

75. By reason of BOH's fraud and intentional misrepresentations, Bank of Guam suffered damages in the sum of $109,621.59 and other damages as may be proved at trial.

### COUNT SEVEN – CONVERSION (GHH and Dewitt Transactions)

76. Bank of Guam repeats and realleges the allegations contained in paragraphs 1 through 75 as if fully set forth herein.

77. On or about October 17, 2006, Bank of Guam was the owner and in possession of $109,621.59.

78. On October 17 and 27, 2006, BOH, in order to induce Bank of Guam to give credit to BOH in the amount of $109,621.59, falsely and fraudulently represented to Bank of Guam that BOH had obtained valid WSUPPs from GHH and Dewitt prior to revoking authorization for the GHH and Dewitt Transaction items.

79. Bank of Guam believed and justifiably relied BOH's representations.

80. BOH's representations were false and were known by BOH to be false when made, and were made by BOH to Bank of Guam with the intent to deceive and defraud Bank of Guam of its property.

81. BOH, after obtaining possession of the $109,621.59, unlawfully converted and disposed of the same to its own use, in derogation of Bank of Guam's ownership rights to said property, profiting and benefiting substantially from its wrongful conduct.

82. As a direct and proximate result of BOH's wrongful conversion of Bank of Guam's property, Bank of Guam has suffered damages in an amount to be determined at trial.

**COUNT EIGHT - UNJUST ENRICHMENT (GHH and DeWitt Transactions)**

83. Bank of Guam repeats and realleges the allegations contained in paragraphs 1 through 82 as if fully set forth herein.

84. Bank of Guam is a participating "Depository Financial Institution" ("DFI") utilizing the ACH network. As a participating DFI, Bank of Guam agreed to be bound by, and to comply with, the ACH Operating Rules.

85. BOH is a participating DFI utilizing the ACH network. As a participating DFI, BOH agreed to be bound by, and to comply with, the ACH Operating Rules.

86. The ACH Operating Rules constitute an agreement between Bank of Guam and BOH.

87. On October 23, 2006 and October 30, 2006, by returning the GHH and Dewitt Transactions items with the "R07" Return Code, BOH, with intent to deceive and defraud Bank of Guam, failed to comply with the ACH Operating Rules, in breach of the parties' agreement. As a result of BOH's breach of the parties' agreement, the ACH network automatically took funds from the Bank of Guam and credited BOH in the amount of $109,621.59.

88. BOH knew or should have known that its conduct was in violation and in breach of the parties' agreement.

89. On or about December 1, 2006, Bank of Guam demanded that BOH return the $109,621.59, but BOH has refused to do so, and by its refusal has become unjustly enriched.

90. As a result of BOH's unjust enrichment, Bank of Guam has suffered damages in the sum of $109,621.59 and other damages as may be proved at trial.

## COUNT NINE - INDEMNIFICATION

91. Bank of Guam repeats and realleges the allegations contained in paragraphs 1 through 90 as if fully set forth herein.

92. ACH OR 4.2 provides that BOH shall indemnify Bank of Guam from any and all loss or expense, including attorneys' fees and costs, resulting directly or indirectly from BOH's breach of warranty under ACH OR 4.2.

93. ACH OR Subsection 8.7.5 provides that BOH shall indemnify Bank of Guam from any and all loss or expense, including attorneys' fees and costs, resulting directly or indirectly from BOH's breach of warranty under ACH OR Subsection 8.7.5.

94. As a direct and proximate result of BOH's breach of warranties, BOH must indemnify Bank of Guam for the substantial losses suffered by Bank of Guam, including attorneys' fees and costs, in an amount to be proved at trial.

## COUNT TEN - PUNITIVE DAMAGES

95. Bank of Guam repeats and realleges the allegations contained in paragraphs 1 through 94 as if fully set forth herein.

96. In connection with the wrongful acts alleged in this Complaint, BOH acted with oppression, fraud, malice, and in bad faith.

97. By reason of BOH's acts of oppression, fraud, malice and bad faith, Bank of Guam is entitled to recover punitive damages.

WHEREFORE, Bank of Guam prays for judgment in its favor and against Bank of Hawaii as follows:

1. For general and compensatory damages for breach of warranties relating to the IDS Transaction, in an amount according to proof.

2. For general and compensatory damages for fraud and intentional misrepresentation relating to the IDS Transaction, in an amount according to proof.

3. For general and compensatory damages for conversion relating to the IDS Transaction, in an amount according to proof;

4. For general and compensatory damages for unjust enrichment relating to the IDS Transaction, in an amount according to proof;

5. For general and compensatory damages for breach of warranties relating to the GHH and Dewitt Transactions, in an amount according to proof;

6. For general and compensatory damages for fraud and intentional misrepresentation relating to the GHH and Dewitt Transactions, in an amount according to proof.

7. For general and compensatory damages for conversion relating to the GHH and Dewitt Transactions, in an amount according to proof;

14
Case 1:07-cv-00007   Document 1   Filed 04/11/2007   Page 14 of 15

8. For general and compensatory damages for unjust enrichment relating to the GHH and Dewitt Transactions, in an amount according to proof;

9. For indemnification by BOH for its breach of warranties in all transactions, alleged in this Complaint, in an amount according to proof;

10. For punitive damages;

11. For pre-judgment and post-judgment interest; and

12. For reasonable attorneys fees and costs of suit and for such other and further relief as the Court may deem appropriate.

## JURY TRIAL DEMAND

Plaintiff Bank of Guam demands a jury trial on all issues so triable.

Dated this 11th day of April, 2007.

**ARRIOLA, COWAN & ARRIOLA**
Attorney for Plaintiff Bank of Guam

By: *[signature]*
**ANITA P. ARRIOLA**