CARLSMITH BALL LLP

ELYZE J. MCDONALD
MEREDITH M. SAYRE
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813
Fax No. 671.477.4375

Attorneys for Defendant
BANK OF HAWAII



**FILED**
DISTRICT COURT OF GUAM

MAY - 1 2007 *nbc*

**MARY L.M. MORAN
CLERK OF COURT**

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| BANK OF GUAM, a Guam banking corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>BANK OF HAWAII, a Hawaii banking corporation,<br><br>        Defendant. | CIVIL CASE NO. 07-00007<br><br>**DEFENDANT BANK OF HAWAII'S MOTION TO DISMISS OR STAY COMPLAINT, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE; MEMORANDUM IN SUPPORT OF MOTION; EXHIBIT "A" AND "B"; DECLARATION OF MEREDITH M. SAYRE; EXHIBITS "C" - "D"; DECLARATION OF SERVICE** |

## DEFENDANT BANK OF HAWAII'S MOTION TO DISMISS OR STAY COMPLAINT, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE

Defendant Bank of Hawaii, by and through its attorneys, Carlsmith Ball LLP, pursuant to Fed. R. Civ. P. 7, 12(b)(3), and 13(a) and the inherent power of the Court to control proceedings, hereby moves this Court to dismiss Plaintiff Bank of Guam's Complaint filed March 27, 2007. The primary grounds for this motion are that a prior action involving the same parties and transactions was filed in the U.S. District Court for the District of Hawaii and this action was filed in contravention of the first-to-file doctrine and the mandate that related claims be brought as counterclaims, rather than in an independent action, creating a multiplicity of actions, wasting court resources and inviting inconsistent rulings.

This Motion is based upon the attached Memorandum in Support of Motion, Declarations, exhibits, and the records and files in this case.

DATED: Hagåtña, Guam, May 1, 2007.

CARLSMITH BALL LLP

ELYZE J. MCDONALD
MEREDITH M. SAYRE

Attorneys for Defendant
BANK OF HAWAII

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| BANK OF GUAM, a Guam banking corporation, | CIVIL CASE NO. 07-00007 |
| Plaintiff, | |
| vs. | **MEMORANDUM IN SUPPORT OF MOTION** |
| BANK OF HAWAII, a Hawaii banking corporation, | |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF MOTION

### I.  INTRODUCTION

Defendant Bank of Hawaii ("Bank of Hawaii") moves for dismissal of this action pursuant to Federal Rules of Civil Procedure 12(b)(3) and 13(a). In the alternative, Bank of Hawaii moves under 28 U.S.C. § 1404(a) to transfer the action to the District of Hawaii, where Bank of Hawaii previously filed a related action against Plaintiff Bank of Guam ("Plaintiff").

### II.  FACTS

It is undisputed that Bank of Hawaii filed its original complaint in the Hawaii District Court on March 27, 2007, two weeks before Plaintiff filed its complaint in this Court. *See* Ex. 1 (the "First Complaint"). It is also undisputed that the Hawaii action and this action involve the same parties and the same subject matter – several automated clearing house ("ACH") transactions between Bank of Hawaii and Plaintiff. *Compare* Ex. 1 and Ex. 2 (the "Second Complaint").[1]

---

[1]     For example, paragraph 18 of the First Complaint describes the same "IDS Transactions" as paragraphs 10-13 of the Second Complaint. Further, paragraphs 29, 36 and 37 of the First Complaint describe the same "return" of the "IDS Transactions" as paragraph 17 of the Second Complaint. Additionally, paragraphs 26-27 of the First

Case 1:07-cv-00007     Document 6     Filed 05/01/2007     Page 3 of 24

ACH transactions are used to facilitate electronic transfers of funds between banking institutions. ACH transactions are governed by rules and related guidance ("ACH Rules") issued and administered by the National Automated Clearing House Association ("NACHA"). *See* Ex. 1 at ¶ 12; Ex. 2 at ¶ 9.

On October 5, 2006, Plaintiff advised Bank of Hawaii that a mutual customer, Information and Data Services ("IDS"), was perpetuating a fraudulent check scheme that involved accounts with both Bank of Hawaii and Plaintiff. *See* Ex. 1 at ¶ 27; Ex. 2 at ¶ 15. However, between September 28 and October 2, 2006, prior to notifying Bank of Hawaii of the scheme, Plaintiff initiated several ACH transactions totaling $2,273,905.59, from IDS accounts at Bank of Hawaii (*i.e.*, a total of $2,273,905.59 was transferred from IDS accounts at Bank of Hawaii to customer accounts at Bank of Guam). *See* Ex. 1 at ¶ 18; Ex. 2 at ¶¶ 10-13. Bank of Hawaii is informed and on that basis believes that, before September 28, 2006, Plaintiff knew, or with the exercise of reasonable diligence should have known that transactions IDS originated through its accounts with Plaintiff, debiting its accounts at Bank of Hawaii, were improper due to the illegal and fraudulent check kiting scheme. *See* Ex. 1 at ¶¶ 16-17. Upon discovering that there were insufficient funds to cover the $2,273,905.59 in the debited accounts, Bank of Hawaii returned the relevant ACH Transactions to Plaintiff, and received a credit from Plaintiff for $2,273,905.59. *See* Ex. 1 at ¶¶ 29, 36 and 37; Ex. 2 at ¶ 17. Bank of Hawaii applied the credit to offset the overdraft positions in IDS's accounts at Bank of Hawaii. The amount of $143,067.34 remained after the offsets. This amount is currently held by Bank of Hawaii, in Honolulu, Hawaii. *See* Ex. 1 at ¶¶ 38-39. At the time of this filing, Bank of Hawaii has a request pending before the Hawaii Court for an order to deposit the $143,067.34 into the Registry of the Court,

Complaint describe the same meetings between Plaintiff and IDS officials regarding check fraud, and Plaintiff's notice to Bank of Hawaii of such, as paragraph 15 of the Second Complaint.

while awaiting determination of whether the amounts deposited should be returned to Bank of Hawaii, or be paid over to Plaintiff, or a third party yet to be determined.

Plaintiff alleges that "sometime in October 2006," it demanded that Bank of Hawaii return the funds in dispute. *See* Ex. 2 at ¶ 26. Further, in January 2007, Plaintiff filed, with NACHA, Reports of Possible ACH Rules Violations ("Reports") against Bank of Hawaii. On March 26, 2007, a NACHA panel determined that, technically, Bank of Hawaii's return of the ACH transactions was not in compliance with the ACH Rules.[2] However, the NACHA panel did *not* address whether Plaintiff first breached its warranties to Bank of Hawaii, as alleged by Bank of Hawaii in the First Complaint. Finally, at no time leading up to the filing of this action did Plaintiff threaten to file suit against Bank of Hawaii. *See* Declaration of Sharon On Leng.

## III.  **ARGUMENT**

### A.  THE COURT SHOULD DISMISS THIS ACTION PURSUANT TO THE FIRST-TO-FILE RULE BECAUSE BANK OF HAWAII FILED THE MIRROR IMAGE SUIT FIRST.

Where a complaint involving the same parties and same issues has already been filed in a different federal district, the court in which the second suit is filed may dismiss, stay or transfer the second suit. *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 623 (9th Cir. 1991). Generally, there is a strong presumption in favor of the forum of the first-filed suit. *See id.*; *see also Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) ("there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-

---

[2]  When Bank of Hawaii returned the relevant ACH transactions to Plaintiff, it was technically required, under the ACH Rules, to first obtain a written statement under penalty of perjury from the customer ("Statement"), authorizing the return. Here, however, the customer ("IDS") was the same party perpetuating the fraud. Therefore, although Bank of Hawaii made several good faith attempts to obtain the Statement, IDS officials refused. Unable to obtain the statement, and in an effort to minimize its losses from the fraudulent scheme, Bank of Hawaii returned the transactions, without the signed Statement. Based on statements provided by the (now former) Controller of IDS, Teofista F. Dulay, Bank of Hawaii did, however, provide a signed affidavit describing the basis for the return and attesting that the "authorized" representatives from IDS were unwilling to provide a signed Statement because they apparently were involved in perpetuating the fraud. *See* Ex. 1 at ¶¶ 29-37.

Case 1:07-cv-00007    Document 6    Filed 05/01/2007    Page 5 of 24

presumption across the federal circuits that favors the forum of the first-filed suit under the first-

filed rule."). The "first-to-file" rule was developed to "serve[] the purpose of promoting efficiency well and should not be disregarded lightly." *Alltrade,* 946 F.2d at 625 (quoting *Church of Scientology v. United States Dept. of the Army*, 611 F.2d 738, 750 (9th Cir. 1979)).

A court must look to three threshold factors in deciding whether to apply the first-to-file rule: the chronology of the two actions; the similarity of the parties; and the similarity of the issues. *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982); *Alltrade*, 946 F.2d at 625. In the present case, all threshold requirements for dismissal under this rule have clearly been met: (1) Bank of Hawaii filed and served its suit prior to Plaintiff's suit in this Court; (2) the same parties are named in both actions; and (3) a review of the two complaints shows that the claims and issues are nearly identical.

Where the threshold factors are met, the second-filed suit must be dismissed under the first-to-file rule, absent a showing of circumstances warranting exception. *See Alltrade,* 946 F.2d at 628; *see also Manuel*, 430 F.3d at 1135 (requiring "compelling circumstances" to warrant an exception to the first-filed rule). Circumstances warranting exception are generally limited to a showing of bad faith or that forum shopping alone motivated the choice to file suit in the situs of the first action. *See Alltrade,* 946 F.2d at 628; *William Gluckin & Co. v. International Palytex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969); *see also BBC International Ltd. v. Lumino Designs, Inc.*, 441 F.Supp.2d 438, 444 (E.D.N.Y. 2006) (nonmoving party "failed to demonstrate that [movant's] motivation for filing suit [first] ... was *solely* upon notions of forum shopping."). The party objecting to dismissal of the second-filed suit bears the burden of proving compelling circumstances to warrant an exception to the rule. *Manuel*, 430 F.3d at 1135.

Bank of Hawaii filed the Hawaii action in good faith and not for purposes of forum shopping. Plaintiff cannot show any conduct by Bank of Hawaii that would make its Hawaii filing anticipatory or otherwise make Bank of Hawaii guilty of forum shopping.

Hawaii's connections to this action are not "slight or manufactured." *See Manuel*, 430 F.3d at 1136. Indeed, Bank of Hawaii is incorporated, headquartered, and maintains its principal place of business in Hawaii. *See CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004) ("The forum state has a substantial interest in adjudicating the dispute of one of its residents who alleges injury due to the tortious conduct of another."); *see also Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133 (9th Cir. 2003) (held California maintains a strong interest in providing an effective means of redress for its residents who are injured, here a corporation whose principal place of business was in California). If either party is guilty of forum shopping, it is most certainly Plaintiff for failing to file its own suit when it had literally months to do so, and then later filing suit in its choice forum only after Bank of Hawaii had initiated proceedings in Hawaii.

Nor is there evidence that Bank of Hawaii filed its Hawaii suit in anticipation of an immediate suit by Plaintiff. To the contrary, Plaintiff had ample opportunity to file an earlier action in its choice forum but chose not to. Plaintiff first demanded that Bank of Hawaii return the amount in dispute in October 2006. It was not until six months later that Bank of Hawaii filed its suit in Hawaii. In no way could this be construed as a "race to the courthouse," to attain first-filed status.[3] *See Manuel*, 430 F.3d at 1136.

---

[3]     Bank of Hawaii further notes that throughout the six months leading up to its filing suit in Hawaii, it maintained a clear position that it was not obligated to return the funds to Plaintiff. At no time did Bank of Hawaii change its position or attempt to mislead Plaintiff. *See* Declaration of Sharon On Leng; *cf.*, *Keener v. Convergys Corp.*, 342 F.3d 1264, 1270 (11th Cir. 2003) (employee lied to employer about his future employment to avoid enforcement of noncompetition agreement, enabling employee to file preemptive declaratory action in his choice forum).

Generally, a suit is anticipatory when the plaintiff filed its suit upon receipt of specific, concrete indications that a suit by the defendant was imminent. *See Manuel*, 430 F.3d at 1137 (requiring "imminent threat of litigation"). For instance, in *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661 (5th Cir. 1967), plaintiff filed a declaratory action following receipt of defendant's letter stating that, if plaintiff did not voluntarily submit to jurisdiction in Washington D.C., defendant would sue in another forum (New York). The plaintiff, Amerada, then filed suit in Texas. The court found that plaintiff's declaratory judgment action was an anticipatory suit, having been "filed by Amerada as the immediate result of the letter inviting it to appear." *Amerada*, 381 F.2d at 663; s*ee also Ven-Fuel Inc. v. Dep't of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982) (upheld lower court's conclusion that party had filed an anticipatory suit where the action was filed one day after receipt of a demand letter promising a judicial proceeding if an assessed penalty was not paid "forthwith").

Here, Plaintiff never threatened suit against Bank of Hawaii. Plaintiff alleges that "some time in October 2006," it demanded that Bank of Hawaii return the amount in dispute. Then, in January 2007, Plaintiff filed the Reports with NACHA. Although the NACHA panel determined that Bank of Hawaii had violated the ACH Rules, the panel did not address Bank of Hawaii's breach of warranty claims against Plaintiff. While this undoubtedly created a reasonable apprehension that a controversy existed sufficient to satisfy the constitutional requirements for a declaratory judgment action, this is not equivalent to an "imminent threat of litigation" for the purposes of the exception to the first-filed rule. *Manuel*, 430 F.3d at 1137; *see also Ward v. Follett Corp.*, 158 F.R.D. 645, 649 (N.D.Cal. 1994) (suit was not anticipatory where it "was *not* brought pursuant to a notice-of-suit letter or any other concrete indication that [] suit [by adverse party] was imminent.") (emphasis added). If the reverse were true, "each time a party sought

declaratory [judgment] in one forum, a defendant filing a second suit in a forum more favorable to [himself] could always prevail under the anticipatory filing exception." *Manuel*, 430 F.3d at 1137 (internal quotation omitted).

Moreover, because Bank of Hawaii's rights and obligations were unclear, even after the NACHA determination,[4] Bank of Hawaii had a legitimate and meritorious rationale for seeking resolution of the issues through its suit for declaratory judgment and breach of warranty. Without resolution of the disputed issues, Bank of Hawaii had a reasonable expectation of harm to its business and customers, such as potential fines and limitations on its access to the ACH system.[5] *See Great American Ins. v. Houston General Ins.*, 735 F.Supp. 581, 585 (S.D.N.Y. 1990) (declaratory judgment is appropriate, "particularly where the delay in seeking judicial intervention will cause substantial prejudice to the declaratory judgment plaintiff.") Indeed, Bank of Hawaii's affirmative action in filing the First Complaint was intended to seek a determination of the respective rights and duties of the two banks, which were both victims of the same fraudulent scheme, so that this unfortunate matter could be fairly and timely resolved.

Finally, under Ninth Circuit precedent, it would not be appropriate for this Court to conduct an analysis of the respective conveniences of the two forums in this matter. *See Alltrade*, 946 F.2d at 628 (quoting *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir 1982) (affirming lower court's dismissal of second action under the first-to-file rule)). In *Alltrade*, the Ninth Circuit stated:

> As for the respective convenience of the two courts, 'normally [this argument] should be addressed to the court in the first-filed action.

---

[4]     NACHA is not a judicial body and has no authority to determine the rights and obligations of its members and to enforce such determinations; it may only fine its members for certain rule violations.

[5]     Bank of Hawaii currently holds the amount of $143,067.34 in Honolulu, Hawaii, which is also in dispute. Bank of Hawaii has moved, by interpleader, that the amount be deposited with the District Court of Hawaii, until further order by the Hawaii District Court. *See* Declaration of Meredith M. Sayre.

Apprehension that the first court would fail to appropriately consider the convenience of the parties and the witnesses should not be a matter for our consideration. ... The court in the second-filed action is not required to duplicate this inquiry.

*Alltrade*, 946 F.2d at 628 (alteration in original) (quoting *Pacesetter*, 678 F.2d at 96) (citing

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 185, 72 S.Ct. 219, 222 (1952)).

However, the *Pacesetter* court did observe that "[i]n appropriate cases it would be relevant for the court in the second-filed action to give consideration to the convenience of the parties and witnesses." *Pacesetter*, 678 F.2d at 96; *see e.g., Ward v. Follett Corp.*, 158 F.R.D. 645, 649 (N.D.Cal. 1994) (balancing of convenience did not weigh so strongly in favor of California suit as to justify departure from first-to-file rule). Bank of Hawaii will, therefore, address the issue.

In evaluating conveniences of the parties, courts consider: the choice of forum of the first-to-file; convenience of the witnesses; the ease of access to evidence; and the overall convenience of litigating in the respective forums. *See Sony Computer Entertainment America Inc. v. America Medical Response, Inc.*, 2007 WL 781969, *3 (N.D.Cal. 2007) (the balance of conveniences, under the first-to-file rule analysis, is analogous to "the convenience of the parties and witnesses" under a transfer of venue motion, 28 U.S.C. § 1404(a)); *see also Med-Tec Iowa, Inc. v. Nomos Corp.*, 76 F.Supp.2d 962, 970 (W.D.Iowa 1999); *Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2244 (1988) (addressing balance of conveniences under § 1404(a)); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842-843 (9th Cir. 1986).

Where the conveniences are essentially equal, deference must be given to the first-filed action and there will be no exception to the first-to-file rule. *See e.g., Ward*, 158 F.R.D. at 649. In other words, where the conveniences are relatively equal, the forum of the first-filed action should be given priority over the second. *Id.*; *see also RJF Holdings III, Inc. v. Kremer Laser*

*Eye Center, Inc.*, 2003 WL 22794987, at \*4 (E.D.Pa. Nov. 24, 2003) ("We will not defer to a later-filed action when to do so merely serves to shift inconveniences from one party to another.") (internal quotation omitted); *Van Dusen v. Barrack*, 376 U.S. 612, 645-646, 84 S.Ct. 805, 824 (1964) (court should only "transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient.")

The conveniences enjoyed by the two parties in their respective chosen forums are relatively equal in this case. For Hawaii-based Bank of Hawaii, Guam is obviously the less convenient forum. Similarly, for Guam-based Plaintiff, Hawaii is the less convenient forum. Given that neither forum would be significantly more convenient for the two parties, deference must be given to the Hawaii forum, the preferred forum of the first-filed plaintiff, Bank of Hawaii.

Regarding access to evidence, Hawaii, as the principal place of business for Bank of Hawaii, is the location of much of the evidence relating to ACH transactions. Most records and evidence pertinent to ACH transactions are electronically stored at Bank of Hawaii's headquarters in Honolulu. Although the District of Guam, as Plaintiff's principal place of business, may also be a convenient forum in this respect, it is not clear that it is more convenient than Hawaii; therefore deference must be given to the Hawaii, the preferred forum of the first-filed plaintiff.

Finally, with respect to the availability and convenience of witnesses, Hawaii is roughly equal to Guam. Courts generally distinguish between party and non-party witnesses. *See e.g.*, *Koh v. Microtek Intern., Inc.*, 250 F.Supp.2d 627, 637 (E.D. Va. 2003). In this matter, the majority of witnesses will be party witnesses, *e.g.*, employees of the parties. Parties are generally assumed to be sufficiently motivated to have their own employees or other allies

appear in person for trial wherever it might take place. *Samsung Elec. Co. v. Rambus, Inc.*, 386 F.Supp.2d 708, 718 (E.D.Va. 2005). Bank of Hawaii will call numerous employees who reside in Hawaii, for example, Brian Ishikawa, Director of Security for Bank of Hawaii, and Bernhardt Alama, a Bank of Hawaii Vice President, who both traveled to Guam with other Bank of Hawaii representatives, to investigate the underlying scandals involved here. There is no indication that one party's witnesses will be burdened or inconvenienced more than the other party's witnesses in this matter.

Additionally, Bank of Hawaii plans to call non-party witnesses who reside in Hawaii or the U.S. Mainland, including, Mike Gilchrist, Vice President of Operations from Westpay, and Jane Larimer, NACHA General Counsel. Certainly it will be more convenient for non-party witnesses residing in the Mainland to travel to Hawaii, as opposed to Guam.

The majority, if not all, non-party witness believed to reside in Guam, who are related to this matter, will be officers or former officers of IDS. However, IDS President Romy Miclat is suspected to have left the territory of Guam and relocated to Manila, Philippines and may therefore be outside either Court's subpoena power. Further, Miclat has already asserted his Fifth Amendment privilege. *See Declaration of Brian S. Ishikawa.* Therefore, even if the Court were able to subpoena Miclat, he is not likely to testify given the implications of self-incrimination. *Id.* Former IDS Controller, Teofista F. Dulay, has already cooperated with Bank of Hawaii and Federal officials in providing detailed information about the IDS fraud and Bank of Guam's involvement. *Id.* Bank of Hawaii therefore anticipates being able to gain Dulay's participation as a non-party witness. Finally, it is expected that expert testimony regarding the ACH system is likely to be provided by one or both parties and that qualified witnesses are likely to be traveling from the U.S. Mainland.

Given the relatively equal conveniences between the two forums, deference must be given to Hawaii, the preferred forum of the first-filed plaintiff.

B.  ALL CLAIMS ASSERTED BY PLAINTIFF CONSTITUTE COMPULSORY COUNTERCLAIMS IN THE FIRST ACTION FILED IN HAWAII THAT WERE REQUIRED TO BE FILED THEREIN UNDER FED. R. CIV. P. 13(a).

A court may dismiss compulsory counterclaims that should have been asserted in an earlier filed action. *See Asset Allocation and Management Co., v. Western Employers Ins. Co.*, 892 F.2d 566, 572 (7th Cir. 1989) ("A court – some court – should have the power to prevent the duplication of litigation ... this is implicit in the very concept of a *compulsory* counterclaim.")

Fed. R. Civ. P. 13(a) requires a party to state, as a counterclaim, any claim that arises out of the "transaction or occurrence that is the subject matter of the opposing party's claim ... ." This requirement was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters. *Southern Const. Co., Inc. v. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 110 (1962). The Rule was particularly directed at one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint. *Id.*

The filing of compulsory counterclaims in a separate, later filed action contravenes the purpose of the Rule. *J. Lyons & Co., Ltd. v. Republic of Tea, Inc.*, 892 F. Supp. 486, 493 (S.D.N.Y. 1995) (dismissed second-filed action under first-to-file rule, but further stated that filing "compulsory counterclaims in a separate action ... contravenes the purpose of [] Rule [13(a)] in that it creates a multiplicity of actions, wastes judicial resources, and unduly burdens the litigation process). Indeed, the Committee Note of 1946 to Rule 13, Subdivision (a), states in relevant part:

> The rewording of the subdivision in this respect insures against an undesirable possibility presented under the original rule whereby a party having a claim which would be the subject of a compulsory

> counterclaim could avoid stating it as such by *bringing an*
> *independent action in another court* after the commencement of
> the federal action before serving his pleading in the federal court.

(Emphasis added). These are precisely the facts *sub judice*. Virtually all claims asserted by

Plaintiff in this second-filed action arise out of the "same transaction or occurrence that is the

subject matter of [Bank of Hawaii's] claim[s]" in the first-filed action brought in Hawaii. *See*

Fed. R. Civ. P. 13(a). This court must therefore, in all equity, dismiss Plaintiff's claims. *Asset*

*Allocation*, 892 F.2d at 573 (under the auspices of Fed. R. Civ. P. 13(a) "[t]here is, no doubt, a

*presumption* that subject to the principles that govern requests for transfer to a more convenient

forum, the first case should be allowed to proceed and the second should be abated").

C.   IN THE ALTERNATIVE, THIS COURT SHOULD TRANSFER THIS
     MATTER TO THE DISTRICT OF HAWAII WHERE THE FIRST-FILED
     ACTION IS PENDING.

Title 28 U.S.C. § 1404(a) provides, "For the convenience of the parties and witnesses, in

the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought." A district court has broad discretion to adjudicate motions

for transfer on a case-by-case basis, considering factors of convenience and fairness. *Stewart*

*Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2244 (1988); *Sparling v. Hoffman*

*Const. Co.*, 864 F.2d 635, 639 (9th Cir. 1988).

When adjudicating a motion to transfer venue under § 1404(a), a district court must

balance a number of case specific factors, including the plaintiff's initial choice of forum,

convenience of the parties and witnesses, and the interest of justice.[6] *Stewart*, 487 U.S. at 29,

---

[6]   Additional factors may be considered, for example: (1) the location where the relevant agreements were
negotiated and executed, (2) the state that is most familiar with the governing law, (3) the respective parties' contacts
with the forum, (4) the contacts relating to the plaintiff's cause of action in the chosen forum, (5) the differences in
costs of litigation in the two forums, the availability of compulsory process to compel attendance of non-party
witnesses, and (6) and the ease of access to proof. *See e.g.*, *Stewart*, 487 U.S. at 29-31, 108 S.Ct. 2239; *Jones v.*
*GNC Franchising, Inc.*, 211 F.3d 495, 498-499 (9th Cir. 2000). Many of these additional factors are simply
subcategories of those listed above and discussed *infra*, or are otherwise inapplicable here.

108 S.Ct. at 2244; *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842-843 (9th Cir. 1986).

Where there are contemporaneous actions, the first-to-file doctrine should be an important factor in the court's § 1404(a) analysis. *See Alltrade*, 946 F.2d at 623 (expressly allowing the district court to "transfer" under the first-to-file rule). Therefore, in balancing the convenience and fairness of the two forums, the forum of the first-filed action should be given great deference. *See Stewart*, 487 U.S. at 29, 108 S.Ct. at 2244 (1988) (district court has broad discretion to adjudicate motions for transfer on a case-by-case basis, considering factors of convenience and fairness); *see also City of New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2nd Cir. 1991) (there is a strong presumption in favor of the forum of the first-filed suit).

There is therefore a strong presumption in favor of Hawaii in this matter. Given the discussion *supra*, Bank of Hawaii has shown that the factors influencing convenience and fairness weigh in favor of the Hawaii forum. *See* § III.A. *supra*. Further, the District of Hawaii is a jurisdiction "where this matter may be brought" pursuant to 28 U.S.C. §§ 1391(a)(2) and 1397. The deference afforded the first-filed action, and principles of convenience and fairness, militate that this action be transferred to the District of Hawaii.

D.     DISMISSAL OR TRANSFER, AS OPPOSED TO STAY, WOULD PREVENT MULTIPLICITY OF ACTIONS AND ACHIEVE RESOLUTION IN A SINGLE LAWSUIT OF ALL DISPUTES ARISING OUT OF COMMON MATTERS.

There is a strong policy favoring the litigation of related claims in the same tribunal so that pretrial discovery can be conducted more efficiently; duplicative litigation can be avoided, thereby saving time and expense for both parties and witnesses; and inconsistent results can be avoided. *See, e.g.*, *Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 619 (2nd Cir. 1968). Allowing a contemporaneous action to proceed would contravene these policies. For the reasons articulated

above, the action before this Court should be dismissed or transferred, and the issues in this matter should be resolved in the first action filed, in Hawaii.

## IV. **CONCLUSION**

For the foregoing reasons, Bank of Hawaii requests that this Motion be granted.

DATED: Hagåtña, Guam, May 1, 2007.

CARLSMITH BALL LLP


_____
ELYZE J. MCDONALD
MEREDITH M. SAYRE

Attorneys for Defendant
BANK OF HAWAII

# EXHIBIT
## "A"

# IN THE UNITED STATES DISTRICT COURT

## FOR THE TERRITORY OF GUAM

| | |
|---|---|
| BANK OF GUAM, a Guam banking corporation, | CIVIL CASE NO. 07-00007 |
| Plaintiff, | DECLARATION OF SHARON ON LENG |
| vs. | |
| BANK OF HAWAII, a Hawaii banking corporation, | |
| Defendant. | |

## <u>DECLARATION OF SHARON ON LENG</u>

I, SHARON ON LENG, hereby declare the following:

1. I am a Vice President and Senior Counsel of Defendant Bank of Hawaii.

2. I make this declaration of my own personal knowledge and am competent to testify to the matters contained herein.

3. At no time leading up to the filing of this action did Plaintiff threaten to file suit against Bank of Hawaii.

4. At no time did Bank of Hawaii change its position or attempt to mislead Plaintiff.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30ᵗͪ day of April, 2007 at Honolulu, Hawaii.

_____
SHARON ON LENG

Case 1:07-cv-00007 Document 6 Filed 05/01/2007 Page 18 of 24

# EXHIBIT
## "B"

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| BANK OF GUAM, a Guam banking corporation,<br><br>        Plaintiff,<br><br>   vs.<br><br>BANK OF HAWAII, a Hawaii banking corporation,<br><br>        Defendant. | CIVIL CASE NO. 07-00007<br><br>DECLARATION OF BRIAN S. ISHIKAWA |

## DECLARATION OF BRIAN S. ISHIKAWA

I, BRIAN S. ISHIKAWA, hereby declare the following:

1.    I am a Vice President and Director of Security for Bank of Hawaii and I make this declaration based upon my investigation related to the dispute in the above-captioned suit.

2.    On Thursday, October 12, 2006, between 11:06 a.m. and 1:19 p.m. (Guam), I conducted an interview of Teofista F. Dulay at the Federal Bureau of Investigation (FBI) office located at Suite 402, 400 Route 8, Mongmong, Guam.

3.    At the interview, Teofista F. Dulay voluntarily stated under oath that:

a.    She worked as the Controller for Information & Data Services (IDS) from June 1, 1999 until her resignation on Monday night, October 9, 2006.

b.    There was a check kiting scheme involving IDS, whereby IDS was submitting bank transactions on uncollected funds or negative balances between Bank of Guam and Bank of Hawaii accounts. Ms. Dulay stated that this practice had been occurring prior to her

employment at IDS, with IDS President Romy Miclat as the mastermind and his brother, Gil Miclat (also an IDS employee), as an active participant in the scheme.

    c.    The majority of the kited funds went to Romy Miclat and to IDS related businesses including ACIP, Compubiz, Juco Holdings, Inc., and Famcor.

    d.    In August, 2006, a Bank of Guam representative, Josephine Mariano, called IDS stating that Bank of Guam was concerned with IDS's banking activity and requested a meeting with Romy Miclat to discuss the matter. The meeting did not get set up due to Romy Miclat's unavailability.

    e.    In September, 2006, Ms. Mariano contacted IDS to again request a meeting to discuss suspicious activity related to IDS's banking activity. As Romy Miclat was unavailable, Ms. Mariano scheduled a meeting with Ms. Dulay and Gil Miclat but the meeting did not take place because Ms. Mariano said that she needed to fly to Palau for last minute business.

    f.    On Tuesday, October 3, 2006, Ms. Mariano attempted again to meet with Romy Miclat but he was unavailable. Ms. Mariano then demanded a meeting with Ms. Dulay and Gil Miclat at IDS's offices. At the meeting on October 3, 2006, Ms. Mariano stated Bank of Guam had detected suspicious activity on the part of IDS and IDS would not be allowed to continue bank transactions with checks and ACH debits to and from Bank of Hawaii.

    4.    On Thursday, October 5, 2006 at approximately 6:45 p.m. Hawaii Time (Friday, October 6, 2006, 2:45 p.m. Guam Time), I spoke to Romy Miclat and his attorney, Rawlen Mantanona on the telephone.

    5.    When I asked Mr. Miclat what he thought had happened, whether he had suspicions as to what happened, and whether his company was investigating the shortfalls,

Mr. Mantanona stated that he was not going to let his client, Mr. Miclat, respond to my questions because the answers might implicate him, his co-workers and IDS in a fraud scheme and therefore, his client would exercise his rights under the 5th Amendment in response to any such questions.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _30th_ day of _April_, 2007 at Honolulu, Hawaii.


_____
BRIAN S. ISHIKAWA

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| BANK OF GUAM, a Guam banking corporation,<br><br>        Plaintiff,<br><br>    vs.<br><br>BANK OF HAWAII, a Hawaii banking corporation,<br><br>        Defendant. | CIVIL CASE NO. 07-00007<br><br><br>**DECLARATION OF MEREDITH M. SAYRE; EXHIBITS "C" - "D"** |

I, MEREDITH M. SAYRE, declare under penalty of perjury that the following statements are true and correct:

      1.     I am an attorney licensed to practice law before all courts in Guam.

      2.     I am an of counsel with Carlsmith Ball LLP, and am one of the attorneys representing Defendant Bank of Hawaii in this action.

      3.     I make this declaration of my own personal knowledge, based on my role as counsel for Bank of Hawaii, and am competent to testify to the matters contained herein.

      4.     I make this Declaration in support of Defendant Bank of Hawaii's Motion to Dismiss or Stay Complaint, or in the Alternative, Motion to Transfer Venue.

      5.     Attached hereto as Exhibit "C" is a true and correct copy of the Complaint for Declaratory Judgment and Damages; Summons filed on March 27, 2007 in the United States District Court for the District of Hawaii.

///

///

6.      Attached hereto as Exhibit "D" is a true and correct copy of the Complaint for Damages; Demand for Jury Trial filed on April 11, 2007 in the United States District Court for the Territory of Guam.

7.      Bank of Hawaii has moved, by interpleader, that the amount of $143,067.34 be deposited with the District Court of Hawaii, until further order by the Hawaii District Court.

8.      In accordance with District Court of Guam, Territory of Guam, Local Rules of Practice, GR 4.1(a), attached hereto is a true and correct copy of *Sony Computer Entertainment America Inc. v. America Medical Response, Inc.*, 2007 WL 781969 (N.D.Cal. 2007).

9.      In accordance with GR 4.1(a), attached hereto is a true and correct copy of *RJF Holdings III, Inc. v. Kremer Laser Eye Center, Inc.*, 2003 WL 22794987 (E.D.Pa. Nov. 24, 2003).

I declare under penalty of perjury under the laws of Guam that the foregoing is true, correct and complete (6 GCA §4308).

Executed this 1st day of May, 2007 at Hagåtña, Guam.

_____
MEREDITH M. SAYRE