# EXHIBIT "C"

CARLSMITH BALL LLP

KATHERINE G. LEONARD 5576-0
JOHN P. DOBROVICH, JR. 8531-0
ASB Tower, Suite 2200
1001 Bishop Street
Honolulu, HI 96813
Tel No. 808.523.2500
Fax No. 808.523.0842
kleonard@carlsmith.com
jdobrovich@carlsmith.com

Attorneys for Plaintiff
BANK OF HAWAII

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| BANK OF HAWAII, | CIVIL NO. **CV07-00166 HG BMK** |
|---|---|
| Plaintiff, | COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES; SUMMONS |
| vs. | |
| BANK OF GUAM, | |
| Defendant. | |

### COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES

Plaintiff BANK OF HAWAII ("Bank of Hawaii"), by and through its attorneys, CARLSMITH BALL LLP, hereby avers and alleges as follows:

### PARTIES

1. Bank of Hawaii is, and was at all times relevant herein, a Hawaii banking corporation duly authorized to do business in, and chartered by,

the State of Hawaii whose principal place of business is 111 South King Street, Honolulu, Hawaii, 96813.

2.  Defendant BANK OF GUAM ("BOG") is, and was at all times relevant herein, a banking corporation duly authorized to do business in the Territory of Guam whose principal place of business is in Hagåtña, Guam.

3.  Bank of Hawaii is informed and on that basis believes that BOG engaged in the conduct alleged herein with knowledge that it would adversely impact Bank of Hawaii and its operations in Honolulu. Indeed, pursuant to the applicable rules described below, the banking transactions of BOG alleged herein required Bank of Hawaii to originate returns of the transactions, from Honolulu, Hawaii.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1332(a) and (e), 1335, and 2361 as this is a matter between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest.

5.  Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(a)(2) and 1397.

## FACTS

### The IDS Check Kiting Scheme

6.  This dispute arises from a long-running "check kiting" scheme by one or more persons acting for or through a BOG customer.

7. Jale Management Information and Data Services, Inc., dba Information and Data Services ("IDS"), is a payroll company, based in Guam.

8. IDS provides payroll management services to employers, including forwarding taxes withheld from employees to the appropriate taxing authorities on behalf of its employer-clients.

9. At all relevant times, IDS was an account holder at both Bank of Hawaii and BOG.

10. At all relevant times, IDS engaged in transactions involving its accounts at Bank of Hawaii through the use of checks and automated clearing house ("ACH") transactions.

11. ACH transactions involve the ACH system, which is a system used in interstate commerce to provide electronic funds transfers.

12. ACH transactions are governed by rules and related guidance (the "ACH Rules") issued and administered by the National Automated Clearing House Association ("NACHA").

13. Check kiting is a form of fraud that involves depositing and withdrawing funds between accounts with different banks and thereby taking advantage of the "float" time. Float time is the time it takes the bank of deposit to collect from the paying bank. Check kiting attempts to obtain funds that are not actually in the account of the paying bank, before the lack of funds is detected.

14. Check kiting is a criminal offense under United States federal law. 18 U.S.C. § 1344 (Federal Bank Fraud Statute).

15. In the present case, one or more persons acting for or through IDS used checks and ACH transactions to draw funds against accounts containing uncollected funds or having negative balances at either BOG or Bank of Hawaii.

### BOG's Knowledge of the IDS Check Kiting Scheme

16. Bank of Hawaii is informed and on that basis believes that, in or before August 2006, BOG began investigating the possible existence of check kiting activities by a person or persons acting for or through IDS.

17. Bank of Hawaii is informed and on that basis believes that, before September 28, 2006, BOG knew, or with the exercise of reasonable diligence should have known that transactions IDS originated through its accounts at BOG, debiting its accounts at Bank of Hawaii, were improper due to the illegal and fraudulent check kiting scheme.

18. On September 28, September 29, and October 2, 2006, BOG originated ACH transactions on behalf of IDS in the amounts of $754,635.45, $751,001.15, and $768,268.99, respectively (the "IDS Transactions"). The IDS Transactions totaled $2,273,905.59.

19. The IDS Transactions involved the transfer of funds to IDS's accounts at BOG by debiting IDS's accounts at Bank of Hawaii at a time when those accounts did not contain sufficient collected funds to cover all of the debits.

20. Banks commonly allow customers to draw on accounts at a time when accounts do not contain sufficient funds, where a long-term account relationship exists.

21. The end point for the IDS Transactions was Honolulu, Hawaii. In accordance with ACH Rules, Bank of Hawaii is registered with NACHA as conducting its transactions in Honolulu, Hawaii.

22. The IDS Transactions were posted by Bank of Hawaii to the accounts of IDS on September 29, October 2, and October 3, 2006.

23. As defined in the ACH Rules, for purposes of the IDS Transactions, IDS was both the "Originator" and "Receiver" for the transactions, BOG was the "Originating Depository Financial Institution" ("ODFI") and Bank of Hawaii was the "Receiving Depository Financial Institution ("RDFI").

24. Under the ACH Rules, BOG, as ODFI for the IDS Transactions, provided specific warranties to Bank of Hawaii, as RDFI for the IDS Transactions. One of these warranties was that BOG had received an acknowledgement from IDS that it would not initiate transactions that violated the ACH Rules or the laws of the United States.

Case 1:07-cv-00007    Document 6-2    Filed 05/01/2007    Page 6 of 17

25. Bank of Hawaii is informed and on that basis believes that, as a result of BOG's knowledge of the check kiting scheme before and at the time the IDS Transactions were originated, BOG knew or had reason to know that the IDS Transactions violated the laws of the United States and therefore could not in good faith give the warranty it owed to Bank of Hawaii under the ACH Rules.

## Bank of Hawaii's Return of IDS Transactions

26. Bank of Hawaii is informed and on that basis believes that, on or about October 3, 2006, officials of BOG met with one or more officers of IDS and notified IDS that BOG had detected suspicious activity on the part of IDS and that IDS would not be allowed to continue bank transactions with check and ACH debits to and from Bank of Hawaii.

27. On October 5, 2006, BOG first advised Bank of Hawaii of the check kiting scheme.

28. Bank of Hawaii is informed and on that basis believes that BOG waited until all of the IDS Transactions had been completed before advising Bank of Hawaii of IDS's check kiting scheme even though BOG knew of or suspected the scheme much earlier.

29. The IDS Transactions were returned by Bank of Hawaii on October 13, 2006.

4810-4750-5665.6.010028-02707        6.

Case 1:07-cv-00007 Document 6-2 Filed 05/01/2007 Page 7 of 17

30. Bank of Hawaii attempted to obtain a written statement under penalty of perjury from IDS ("Statement") to support its return of the IDS Transactions, including by contacting IDS's President, Mr. Romy Miclat, and by attempting to contact the individual who served as Controller of IDS until October 9, 2006.

31. Mr. Miclat, whom Bank of Hawaii is informed and on that basis believes is or may be a principal participant in the check kiting scheme, refused to provide a Statement, invoking his Fifth Amendment rights through counsel.

32. Although Bank of Hawaii was unable, despite its best efforts, to obtain a Statement, it supplied an affidavit of an officer of Bank of Hawaii in its place to support the return of the IDS Transactions (the "Affidavit").

33. The Affidavit described an October 12, 2006 interview with the individual who had served as Controller of IDS from June 1, 1999 to October 9, 2006. The interview took place in offices of the FBI with FBI agents present.

34. In the interview, the former Controller described the ongoing check kiting scheme at IDS and efforts of BOG going back to August 2006 to obtain information about suspicious activity at IDS. According to the former Controller, BOG advised IDS on October 3, 2006 that BOG had detected suspicious activity on the part of IDS and IDS would not be allowed to continue bank transactions with checks and ACH debits to and from Bank of Hawaii.

4810-4750-5665.6.010028-02707        7.

Case 1:07-cv-00007    Document 6-2    Filed 05/01/2007    Page 8 of 17

35. The Affidavit also provided additional information about IDS's check kiting scheme, the use of ACH transactions originated by BOG as an integral part of that scheme, and the inability of Bank of Hawaii to obtain any information about the scheme or a Statement from IDS, including Mr. Miclat's exercising his right against self-incrimination under the Fifth Amendment.

36. Bank of Hawaii's returns of the IDS Transactions were received by BOG on October 16, 2006.

37. Bank of Hawaii received a credit from BOG in the amount of $2,273,905.59.

38. Bank of Hawaii applied the credit to offset the overdraft positions in IDS's accounts at Bank of Hawaii.

39. The amount of $143,067.34 remained after the offsets. This amount is currently held by Bank of Hawaii, in Honolulu, Hawaii.

40. On October 16, 2006, after Bank of Hawaii had returned the IDS Transactions, an unidentified party attempted to originate new transactions in the form of ACH transfers, through BOG, in the exact amounts of the IDS Transactions; the newly originated transactions were promptly rejected by Bank of Hawaii.

41. Bank of Hawaii is informed and on that basis believes that one or more persons acting for or through IDS were responsible for the attempt to

originate the new ACH transfers and, therefore, believes that BOG was still allowing IDS to use the ACH system well after the check kiting scheme had been discovered.

### BOG's Continuing Efforts to Frustrate Return of Transactions

42. BOG filed Reports of Possible Rules Violations, dated December 1, 2006 ("Reports") with NACHA, in Herndon, Virginia, alleging the Bank of Hawaii improperly executed the returns under the ACH rules.

43. In the Reports, BOG claimed that Bank of Hawaii was not entitled to return the IDS Transactions after discovering the check kiting scheme.

44. In the Reports, BOG admitted that the IDS Transactions were part of a long established pattern of "check kiting" and fraudulent ACH transactions on the part of one or more senior employees of IDS.

45. On March 26, 2007, a NACHA panel determined that Bank of Hawaii violated the ACH Rules because the Affidavit submitted in support of the return code used to return the IDS Transactions did not comply with the technical rule requirements for a Statement.

46. The NACHA panel did not address whether BOG breached its warranties to Bank of Hawaii, as the sole issue addressed (related to the IDS Transactions) was the matter of Bank of Hawaii's technical compliance with the return code rule requirements.

47. BOG has demanded payment of the full amount of the IDS Transactions, $2,273,905.59. Bank of Hawaii has not made these payments.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment - Breach of Warranty)

48. The allegations of paragraphs 1-47 are repeated and realleged as if fully set forth herein.

49. Bank of Hawaii contends it was entitled to return the IDS Transactions, *inter alia*, under the warranty and indemnification provisions set forth in Section 2.2 of the ACH Rules, notwithstanding any technical deficiency in the returns. BOG's breach of warranty is independent of the issues related to Bank of Hawaii's returns.

50. Under the ACH Rules, BOG, as the ODFI for the transactions at issue, provided specific warranties to Bank of Hawaii as the RDFI, as described in paragraph 24 of this Complaint, including that IDS, as the Originator, had acknowledged to BOG that it would not initiate transactions that violate the ACH Rules or the laws of the United States. ACH Rules Section 2.1.1.

51. BOG knew or had reason to know that the IDS Transactions that one or more persons acting for or through IDS initiated through BOG violated federal law and therefore BOG could not in good faith give warranties required by the ACH Rules.

52. At the outset of the IDS Transactions, BOG was in breach of its express warranties. BOG must therefore bear the risk of loss on the transactions through its indemnification obligations set forth in Section 2.2 of the ACH Rules.

53. At present, an actual and justiciable controversy exists between Bank of Hawaii and BOG concerning whether Bank of Hawaii was entitled to return all IDS Transactions to BOG. Bank of Hawaii contends the returns were proper, notwithstanding any improper execution, based upon BOG's breach of its warranties to Bank of Hawaii. Bank of Hawaii is informed and on that basis believes that BOG contends the Bank of Hawaii returns were improper.

54. Bank of Hawaii seeks a judicial declaration of its rights and duties under the ACH Rules with respect to its claim that BOG breached its warranties regarding the IDS Transactions. Judicial resolution of this matter will resolve the dispute between Bank of Hawaii and BOG concerning their respective rights and obligations under the ACH Rules and will be in the interests of justice, since it will clarify the parties' rights and render further litigation unnecessary. Under the circumstances, a declaratory judgment regarding the parties' rights and obligations under the ACH Rules is proper and warranted pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

## SECOND CAUSE OF ACTION
### (Interpleader)

55. The allegations of paragraphs 1-54 are repeated and realleged as if fully set forth herein.

56. Bank of Hawaii holds and will tender the amount of $143,067.34 (the "Deposit") into the Registry.

57. Bank of Hawaii, BOG or others may have an interest in the money.

## THIRD CAUSE OF ACTION
### (Indemnity)

58. The allegations of paragraphs 1-57 are repeated and realleged as if fully set forth herein.

59. BOG continues to challenge Bank of Hawaii's return of the IDS Transactions.

60. As a result of BOG's conduct, Bank of Hawaii has had to incur significant expenses in investigating the IDS transactions and addressing BOG's efforts to frustrate the return of the transactions, including attorneys' fees and costs, resulting both directly and indirectly from BOG's breach of warranty and refusal to accept return of the IDS transactions, as articulated herein.

61. BOG, as ODFI, bears the burden of these expenses under the indemnity provisions of the ACH Rules, which require BOG to indemnify the

Bank of Hawaii "from and against any and all resulting claim, demand, loss, liability, or expense, including attorneys' fees and costs, resulting directly from the breach of these warranties." ACH Rules, Subsection 2.8.3.11.

WHEREFORE Bank of Hawaii prays that, after due proceedings are had, there be judgment in its favor and against BOG as follows:

1. For entry of declaratory judgment that Bank of Hawaii was entitled to return all relevant ACH transactions under the warranty and indemnification provisions set forth in Section 2.2 of the ACH Rules;

2. In accordance with Fed. R. Civ. P. 67 and LR 58.1(d), the Court order Bank of Hawaii to deposit the Deposit into the Registry of the Court to await determination of whether the amounts deposited should be returned to Bank of Hawaii, or be paid over to BOG, or a third party yet to be determined;

3. BOG, their agents and attorneys, be enjoined and restrained from presenting any suit against Bank of Hawaii, or its agents in regard to the Deposit;

4. The Court order BOG to interplead its respective claims;

5. The Court adjudge the respective rights and obligations of the parties and any third party that may be identified;

6. For damages, including expenses Bank of Hawaii has incurred as a result of BOG's wrongful conduct, in an amount to be shown at the time of trial;

7. For Bank of Hawaii's attorneys' fees and costs of this suit; and

8. For such other and further relief as this Court may deem appropriate.

DATED: Honolulu, Hawaii, March 27, 2007.

KATHERINE G. LEONARD
JOHN P. DOBROVICH, JR.
Attorneys for Plaintiff
BANK OF HAWAII

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| BANK OF HAWAII, | CIVIL NO. _____ |
|---|---|
| Plaintiff, | SUMMONS |
| vs. | |
| BANK OF GUAM, | |
| Defendant. | |

## **SUMMONS**

TO THE DEFENDANT:

You are hereby summoned and required to serve upon Plaintiff's attorneys, whose address is stated above, an answer to the Complaint for Declaratory Judgment and Damages which is herewith served upon you, within twenty (20) days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

This Summons shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the general public, unless a judge of the above-entitled Court permits, in writing on this Summons, personal delivery during those hours.

4810-4750-5665.6 010028-02707

Failure to obey this Summons may result in an entry of default and default judgment against the disobeying person or party.

DATED: Honolulu, Hawaii, __MAR 2 7 2007__.

SUE BEITIA

CLERK OF THE ABOVE-ENTITLED COURT

/s/ Alison Greaney

(SEAL)

Deputy Clerk, United States
District Court, District of Hawaii

4810-4750-5665.6.010028-02707      2.