# EXHIBIT
# "D"

ANITA P. ARRIOLA
JOAQUIN C. ARRIOLA
MARK E. COWAN
ARRIOLA, COWAN & ARRIOLA
259 MARTYR STREET, SUITE 201
AGANA, GUAM 96910
Telephone: (671) 477-9731/33
Telecopier: (671) 477-9734

Attorneys for Plaintiff Bank of Guam

**FILED**
DISTRICT COURT OF GUAM

APR 1 1 2007

MARY L.M. MORAN
CLERK OF COURT

### IN THE UNITED STATES DISTRICT COURT
### FOR THE TERRITORY OF GUAM

| | |
|---|---|
| BANK OF GUAM,<br>    a Guam banking corporation,<br><br>                    Plaintiff,<br><br>    vs.<br><br>BANK OF HAWAII,<br>    a Hawaii banking corporation,<br><br>                    Defendant. | CIVIL CASE NO. **07 - 0 0 0 0 7**<br>_____<br><br><br>**COMPLAINT FOR DAMAGES;<br>DEMAND FOR JURY TRIAL** |

### COMPLAINT FOR DAMAGES

Plaintiff BANK OF GUAM ("Bank of Guam"), by and through its attorneys, ARRIOLA,

COWAN & ARRIOLA, hereby alleges as follows:

　　　　1.　　　Bank of Guam is, and was at all times relevant herein, a Guam banking

corporation duly authorized to do business in, and chartered by, the territory of Guam, whose

principal place of business is 111 Chalan Santo Papa, Hagatna, Guam, 96910.

　　　　2.　　　Defendant Bank of Hawaii ("BOH") is, and was at all times relevant herein, a

banking corporation that is chartered in the State of Hawaii, and is duly authorized to do business

in the territory of Guam.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1332(a) and (e). This is a matter between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest.

4.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a)(1) and (2).

## FACTS

### The IDS Transaction

5.    Jale Management Information and Data Services, Inc., dba Information and Data Services ("IDS") is a Guam corporation that provides payroll services to various customers in Guam.

6.    At all relevant times, IDS was an account holder at both Bank of Guam and BOH.

7.    At all relevant times, IDS engaged in transactions involving its accounts at Bank of Guam and BOH through the use of checks and automated clearing house ("ACH") transactions.

8.    ACH transactions involve the ACH network, which is a system used in interstate commerce to provide electronic funds transfers.

9.    ACH transactions are governed by rules and related guidance (the "ACH Rules") issued and administered by the National Automated Clearing House Association ("NACHA").

10.    On or about September 28, 2006, IDS uploaded four items totaling $754,635.45, which were received by BOH on September 29, 2006. "Uploading" in the banking context means to send items for payment from a computer electronically to a bank. In this case, IDS used Bank of Guam's computerized cash management system to upload items to BOH.

11.    On or about September 29, 2006, IDS uploaded four items totaling $751,001.15,

2

which were received by BOH on October 2, 2006.

12.    On or about October 2, 2006, IDS uploaded four items totaling $768,269.99, which were received by BOH on October 3, 2006.

13.    From September 28, 2006 to October 2, 2006, IDS uploaded a total amount of 2,273,905.50 ("the IDS Transaction").

14.    BOH did not return any of the foregoing IDS Transaction items, and Bank of Guam credited IDS's account in the amount of $2,273,905.59. IDS immediately began drawing on the funds in its Bank of Guam account.

15.    On October 3 and 5, 2006, Bank of Guam officials met with IDS officers to discuss irregularities in checks written by IDS. As a result of these meetings, Bank of Guam became concerned that IDS may be involved in a check kiting scheme involving IDS accounts with Bank of Guam and BOH. Bank of Guam officials immediately contacted BOH officials on October 5, 2006 to advise them of their concerns and notified them that any further transactions with the IDS accounts would create a loss to both banks.

16.    Instead of working with Bank of Guam to prevent losses to both banks, on information and belief, sometime in October 2006 BOH determined to engage in a scheme to defraud Bank of Guam by utilizing the ACH network. BOH knew that if it returned the IDS Transaction items, the ACH network would automatically take the amounts for those items from Bank of Guam and credit such sums to BOH. BOH also knew that by fraudulently using the ACH network in this manner, Bank of Guam would suffer substantial losses.

17.    In furtherance of BOH's fraudulent scheme, eight days after being notified of possible irregularities in IDS's accounts and of potential losses to Bank of Guam, on October 13, 2006 (Hawaii time) BOH returned the IDS Transaction items to Bank of Guam with a "Return

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

3

Code: R07 Revoked Authorization." The BOH returns were received by Bank of Guam on October 16, 2006 (Guam time). As a result of the BOH returns, the ACH network automatically took the funds from Bank of Guam and credited BOH in the amount of $2,273,905.59.

18. Under ACH Operating Rules ("OR"), for purposes of the IDS Transactions, IDS is both the "Originator" and "Receiver" for the transactions; Bank of Guam was the "Originating Depository Financial Institution" ("ODFI") and BOH was the "Receiving Depository Financial Institution ("RDFI").

19. Appendix Six, ACH OR 6.1.2 requires that "[e]ach return entry must comply with the requirements of Appendix Five (Return Entries)."

20. Appendix Five, ACH OR 5.4 defines a Return Code of "R07" as an "Authorization Revoked by Customer." ACH OR 5.4 requires that under an "R07" Return Code, the Receiver (IDS) must provide the RDFI (BOH) a written statement under penalty of perjury ("WSUPP") that the authorization for the debit entry has been revoked by the Receiver. Further, the WSUPP must be obtained by the RDFI (BOH) **prior** to initiating return of the items. ACH OR 8.7.5.

21. On October 16, 2006, after BOH returned the IDS Transaction items to Bank of Guam, Bank of Guam Vice President Josephine Mariano telephoned, James Polk, Pacific Islands Division Manager and Executive Vice President at BOH, to determine whether BOH had a WSUPP from IDS as required under ACH OR 5.4 and ACH OR 8.7.5. Polk admitted that BOH did not have a WSUPP, but that he "expected" to obtain one within ten days. Polk knew or should have known that any WSUPP procured **after** return of the IDS Transaction items would be untimely and ineffective to support such return. On the same day, Ms. Mariano contacted IDS President Romy Miclat and determined that IDS had not executed a WSUPP for BOH.

4

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

22. On October 16, 2006, Ms. Marianao wrote a letter to Polk, requesting that BOH provide a copy of any WSUPP provided by the Receiver (IDS) to the RDFI (BOH).

23. BOH has never provided a WSUPP to Bank of Guam.

24. Bank of Guam filed a complaint against BOH with the NACHA Compliance Department, alleging BOH's violations of ACH ORs 4.2, 6.1.2, 5.4 and 8.7.5.

25. On March 26, 2006, a NACHA panel determined that BOH violated the ACH Rules in not having a WSUPP as required under the ACH Rules. Bank of Guam did not receive a copy of the NACHA decision until April 3, 2007.

26. Sometime in October 2006, Bank of Guam demanded that BOH return the $2,273,905.59, but BOH has refused to do so.

### The Guam Hilton Hotel and Dewitt Transactions

27. At all relevant times, IDS provided payroll services to Davinci-RP Operating Lessee, Inc. dba Hilton Guam Resort and Spa ("GHH") and received payment from GHH to process the payroll of GHH employees.

28. At all relevant times, IDS provided payroll services to Dewitt Transportation Services of Guam, Inc. (Dewitt) and received payment from Dewitt to process the payroll of Dewitt employees.

29. On October 4, 2006, IDS uploaded an item to BOH in the amount of $17,362.03. On October 5, 2006, IDS uploaded three additional items totaling $92,250.56 to BOH.

30. The total amount of the four items uploaded to BOH was $109,612.59 ("the GHH and Dewitt Transactions"). BOH did not have any WSUPPs from GHH or Dewitt and did not return these items. Instead, BOH debited all four of the GHH and Dewitt Transaction items from the GHH and Dewitt accounts at BOH.

5

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

31. In furtherance of its scheme to defraud Bank of Guam, and after obtaining funds from its return of the IDS Transaction items, BOH again unlawfully utilized the ACH network to cause substantial losses to Bank of Guam.

32. On information and belief, on or about October 17, 2006, BOH induced a Dewitt representative to execute and deliver a WSUPP to BOH, purportedly to revoke Dewitt's authorization of "any and all **future** payments on October 17, 2006" for items drawn on Dewitt's account at BOH. (Emphasis added). BOH knew or should have known that at the time it was procured, such WSUPP was untimely and ineffective to support return of the GHH and Dewitt Transactions items.

33. On information and belief, on or about October 27, 2006, BOH induced a GHH representative to execute and deliver a WSUPP to BOH, purportedly to revoke GHH's authorization of "any and all **future** payments on October 20, 2006" for items drawn on GHH's account at BOH. (Emphasis added). BOH knew or should have known that at the time it was procured, such WSUPP was untimely and ineffective to support return of the GHH and Dewitt Transactions items. BOH also knew or should have known that such WSUPP was backdated in that it purported to affect transactions from October 20, 2006, yet was not executed until on or about October 27, 2006.

34. On October 23, 2006, BOH returned the first GHH and Dewitt Transaction item. On October 30, 2006, BOH returned the remaining three GHH and Dewitt Transaction items. BOH returned all four items using the "R07" Return Code, knowing that the WSUPPs from GHH and Dewitt were untimely and ineffective to support return of the GHH and Dewitt Transactions items.

35. BOH, with the intent to defraud Bank of Guam, returned the GHH and Dewitt

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

6

Transaction items using the R07 Return Code long after BOH had already debited the GHH and Dewitt accounts for these items.

36.     BOH, with the intent to defraud Bank of Guam, used the GHH and Dewitt WSUPPs to support its return of the GHH and Dewitt Transaction items, despite the fact that the WSUPPs unambiguously revoked authorizations for "future" items, and not for the items that had already been debited by BOH. In addition, the GHH and Dewitt WSUPPs were invalid because GHH and Dewitt failed to give notice to IDS of the revocation, as required by ACH OR Subsection 2.1.2.

37.     As a result of BOH's return of the GHH and Dewitt Transaction items, the ACH network automatically took $109,621.59 from Bank of Guam's account and credited that amount to BOH.

38.     By engaging in a fraudulent scheme to return the GHH and Dewitt Transaction items after already debiting those accounts, BOH intentionally caused Bank of Guam to suffer a substantial loss of $109, 612.59.

39.     Bank of Guam filed a Rules Violation complaint with NACHA on December 1, 2006 and demanded that BOH return the $109,612.59, but BOH has refused to do so.

### COUNT ONE – BREACH OF WARRANTIES (IDS Transaction)

40.     Bank of Guam repeats and realleges the allegations contained in paragraphs 1 through 39 as if fully set forth herein.

41.     By returning the IDS Transaction items with the R07 Return Code, BOH warranted to Bank of Guam that, prior to initiating the return of the items, BOH had obtained a WSUPP from IDS revoking the authorization for those items. ACH OR Subsection 8.7.5.

42.     ACH OR 4.2 provides, among other things, that each RDFI warrants to each

7

ODFI that it will "comply with the requirements of these rules. "

43.    Bank of Guam justifiably relied upon BOH's warranties under the aforementioned ACH Operating Rules.

44.    BOH breached the warranties it gave to Bank of Guam under ACH OR Subsection 8.7.5 and ACH OR 4.2, resulting in a loss to Bank of Guam in the amount of $2,273,905.50 and other losses to be proved at trial.

## COUNT TWO – FRAUD AND INTENTIONAL MISREPRESENTATION
(IDS Transaction)

45.    Bank of Guam repeats and realleges the allegations contained in paragraphs 1 through 44 as if fully set forth herein.

46.    On October 13, 2006, by returning the IDS Transaction items with the "R07" Return Code, BOH, with intent to deceive and defraud Bank of Guam, represented to Bank of Guam that BOH had received a WSUPP from IDS prior to revoking authorization for the IDS Transaction items.

47.    BOH's representations were false and BOH knew them to be false when they were made.

48.    In truth and fact, BOH had not obtained any authorization from IDS prior to revoking authorization for the IDS Transaction items.

49.    Bank of Guam believed and justifiably relied upon BOH's representations.

50.    By reason of BOH's fraud and intentional misrepresentations, Bank of Guam suffered damages in the sum of $2,273,905.59 and other damages as may be proved at trial.

## COUNT THREE – CONVERSION (IDS Transaction)

51.    Bank of Guam repeats and realleges the allegations contained in paragraphs 1 through 50 as if fully set forth herein.

8

52. On or about October 13, 2006, Bank of Guam was the owner and in possession of $2,273,905.59.

53. On October 13, 2006, BOH, in order to induce Bank of Guam to give credit to BOH in the amount of $2,273,905.59, falsely and fraudulently represented to Bank of Guam that BOH had obtained a WSUPP from IDS prior to revoking authorization for the IDS Transaction items.

54. Bank of Guam believed and justifiably relied upon BOH's representations.

55. BOH's representations were false and were known by BOH to be false when made, and were made by BOH to Bank of Guam with the intent to deceive and defraud Bank of Guam of its property.

56. BOH, after obtaining possession of the $2,273,905.59, unlawfully converted and disposed of the same to its own use, in derogation of Bank of Guam's ownership rights to said property, profiting and benefiting substantially from its wrongful conduct.

57. As a direct and proximate result of BOH's wrongful conversion of Bank of Guam's property, Bank of Guam has suffered damages in an amount to be determined at trial.

**COUNT FOUR – UNJUST ENRICHMENT (IDS Transaction)**

58. Bank of Guam repeats and realleges the allegations contained in paragraphs 1 through 57 as if fully set forth herein.

59. Bank of Guam is a participating "Depository Financial Institution" ("DFI") utilizing the ACH network. As a participating DFI, Bank of Guam agreed to be bound by, and to comply with, the ACH Operating Rules.

60. BOH is a participating DFI utilizing the ACH network. As a participating DFI, BOH agreed to be bound by, and to comply with, the ACH Operating Rules.

9

61. The ACH Operating Rules constitute an agreement between Bank of Guam and BOH.

62. On October 13, 2006, by returning the IDS Transaction items with the "R07" Return Code, BOH, with intent to deceive and defraud Bank of Guam, failed to comply with the ACH Operating Rules, in breach of the parties' agreement. As a result of BOH's breach of the parties' agreement, the ACH network automatically took funds from the Bank of Guam and credited BOH in the amount of $2,273,905.59.

63. BOH knew or should have known that its conduct was in violation and in breach of the parties' agreement.

64. Sometime in October and December 2006, Bank of Guam demanded that BOH return the $2,273,905.59, but BOH has refused to do so, and by its refusal has become unjustly enriched.

65. As a result of BOH's unjust enrichment, Bank of Guam has suffered damages in the sum of $2,273,905.59 and other damages as may be proved at trial.

**COUNT FIVE – BREACH OF WARRANTIES (GHH and Dewitt Transactions)**

66. Bank of Guam repeats and realleges the allegations contained in paragraphs 1 through 65 as if fully set forth herein.

67. ACH OR 4.2 provides, among other things, that each RDFI warrants to each ODFI that it will "comply with the requirements of these rules." By returning the GHH and Dewitt Transaction items with the R07 Return Code, BOH warranted to Bank of Guam that it had obtained valid WSUPPs from GHH and Dewitt. ACH OR Subsection 8.7.5.

68. Bank of Guam justifiably relied upon BOH's warranties under the aforementioned ACH Operating Rules.

10

69. BOH breached the warranties it gave to Bank of Guam under ACH OR Subsection 8.7.5 and ACH OR 4.2, resulting in a loss to Bank of Guam in the amount of $109,621.59 and other losses to be proved at trial.

## COUNT SIX – FRAUD AND INTENTIONAL MISREPRESENTATION
### (GHH and Dewitt Transactions)

70. Bank of Guam repeats and realleges the allegations contained in paragraphs 1 through 69 as if fully set forth herein.

71. On October 23, 2006 and October 30, 2006, by returning the GHH and Dewitt Transactions items with the "R07" Return Code, BOH, with intent to deceive and defraud Bank of Guam, represented to Bank of Guam that BOH had received valid WSUPPs from GHH and Dewitt prior to revoking authorization for the GHH and Dewitt Transaction items.

72. BOH's representations were false and BOH knew them to be false when they were made.

73. In truth and fact, BOH had not obtained valid authorizations from GHH or Dewitt prior to revoking authorization for the GHH and Dewitt Transactions items.

74. Bank of Guam believed and justifiably relied upon BOH's representations.

75. By reason of BOH's fraud and intentional misrepresentations, Bank of Guam suffered damages in the sum of $109,621.59 and other damages as may be proved at trial.

## COUNT SEVEN – CONVERSION (GHH and Dewitt Transactions)

76. Bank of Guam repeats and realleges the allegations contained in paragraphs 1 through 75 as if fully set forth herein.

77. On or about October 17, 2006, Bank of Guam was the owner and in possession of $109,621.59.

11

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

78.    On October 17 and 27, 2006, BOH, in order to induce Bank of Guam to give credit to BOH in the amount of $109,621.59, falsely and fraudulently represented to Bank of Guam that BOH had obtained valid WSUPPs from GHH and Dewitt prior to revoking authorization for the GHH and Dewitt Transaction items.

79.    Bank of Guam believed and justifiably relied BOH's representations.

80.    BOH's representations were false and were known by BOH to be false when made, and were made by BOH to Bank of Guam with the intent to deceive and defraud Bank of Guam of its property.

81.    BOH, after obtaining possession of the $109,621.59, unlawfully converted and disposed of the same to its own use, in derogation of Bank of Guam's ownership rights to said property, profiting and benefiting substantially from its wrongful conduct.

82.    As a direct and proximate result of BOH's wrongful conversion of Bank of Guam's property, Bank of Guam has suffered damages in an amount to be determined at trial.

**COUNT EIGHT - UNJUST ENRICHMENT (GHH and DeWitt Transactions)**

83.    Bank of Guam repeats and realleges the allegations contained in paragraphs 1 through 82 as if fully set forth herein.

84.    Bank of Guam is a participating "Depository Financial Institution" ("DFI") utilizing the ACH network. As a participating DFI, Bank of Guam agreed to be bound by, and to comply with, the ACH Operating Rules.

85.    BOH is a participating DFI utilizing the ACH network. As a participating DFI, BOH agreed to be bound by, and to comply with, the ACH Operating Rules.

86.    The ACH Operating Rules constitute an agreement between Bank of Guam and BOH.

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

12

87. On October 23, 2006 and October 30, 2006, by returning the GHH and Dewitt Transactions items with the "R07" Return Code, BOH, with intent to deceive and defraud Bank of Guam, failed to comply with the ACH Operating Rules, in breach of the parties' agreement. As a result of BOH's breach of the parties' agreement, the ACH network automatically took funds from the Bank of Guam and credited BOH in the amount of $109,621.59.

88. BOH knew or should have known that its conduct was in violation and in breach of the parties' agreement.

89. On or about December 1, 2006, Bank of Guam demanded that BOH return the $109,621.59, but BOH has refused to do so, and by its refusal has become unjustly enriched.

90. As a result of BOH's unjust enrichment, Bank of Guam has suffered damages in the sum of $109,621.59 and other damages as may be proved at trial.

COUNT NINE - INDEMNIFICATION

91. Bank of Guam repeats and realleges the allegations contained in paragraphs 1 through 90 as if fully set forth herein.

92. ACH OR 4.2 provides that BOH shall indemnify Bank of Guam from any and all loss or expense, including attorneys' fees and costs, resulting directly or indirectly from BOH's breach of warranty under ACH OR 4.2.

93. ACH OR Subsection 8.7.5 provides that BOH shall indemnify Bank of Guam from any and all loss or expense, including attorneys' fees and costs, resulting directly or indirectly from BOH's breach of warranty under ACH OR Subsection 8.7.5.

94. As a direct and proximate result of BOH's breach of warranties, BOH must indemnify Bank of Guam for the substantial losses suffered by Bank of Guam, including attorneys' fees and costs, in an amount to be proved at trial.

13

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

## COUNT TEN - PUNITIVE DAMAGES

95. Bank of Guam repeats and realleges the allegations contained in paragraphs 1 through 94 as if fully set forth herein.

96. In connection with the wrongful acts alleged in this Complaint, BOH acted with oppression, fraud, malice, and in bad faith.

97. By reason of BOH's acts of oppression, fraud, malice and bad faith, Bank of Guam is entitled to recover punitive damages.

WHEREFORE, Bank of Guam prays for judgment in its favor and against Bank of Hawaii as follows:

1. For general and compensatory damages for breach of warranties relating to the IDS Transaction, in an amount according to proof.

2. For general and compensatory damages for fraud and intentional misrepresentation relating to the IDS Transaction, in an amount according to proof.

3. For general and compensatory damages for conversion relating to the IDS Transaction, in an amount according to proof;

4. For general and compensatory damages for unjust enrichment relating to the IDS Transaction, in an amount according to proof;

5. For general and compensatory damages for breach of warranties relating to the GHH and Dewitt Transactions, in an amount according to proof;

6. For general and compensatory damages for fraud and intentional misrepresentation relating to the GHH and Dewitt Transactions, in an amount according to proof.

7. For general and compensatory damages for conversion relating to the GHH and Dewitt Transactions, in an amount according to proof;

14

8.    For general and compensatory damages for unjust enrichment relating to the GHH and Dewitt Transactions, in an amount according to proof;

9.    For indemnification by BOH for its breach of warranties in all transactions, alleged in this Complaint, in an amount according to proof;

10.    For punitive damages;

11.    For pre-judgment and post-judgment interest; and

12.    For reasonable attorneys fees and costs of suit and for such other and further relief as the Court may deem appropriate.

## JURY TRIAL DEMAND

Plaintiff Bank of Guam demands a jury trial on all issues so triable.

Dated this 11th day of April, 2007.

ARRIOLA, COWAN & ARRIOLA
Attorney for Plaintiff Bank of Guam

By: _ANITA P. ARRIOLA_
ANITA P. ARRIOLA

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

15

# DISTRICT COURT OF GUAM

BANK OF GUAM

**V.**

**SUMMONS IN A CIVIL CASE**

BANK OF HAWAII

CASE NUMBER: **07-00007**

TO: (Name and address of Defendant)
BANK OF HAWAII
134 WEST SOLEDAD AVENUE
HAGATNA, GUAM  96910

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

ANITA P. ARRIOLA, ESQ.
ARRIOLA, COWAN & ARRIOLA
C&A PROFESSIONAL BUILDING
259 MARTYR STREET, SUITE 201
HAGATNA, GUAM  96910

an answer to the complaint which is served on you with this summons, within **TWENTY (20)** days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

MARY L. M. MORAN
Clerk Of Court

APR 11 2007

CLERK

(By) DEPUTY CLERK

DATE

## RETURN OF SERVICE

| Service of the Summons and complaint was made by me[1] | DATE APRIL 11, 2007 |
|---|---|
| NAME OF SERVER (PRINT) DANIEL T. MUNA | TITLE PROCESS SERVER |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: Bank of Guam, 134 West Soledad Ave. Hagatna, Gu

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

☐ Other (specify): _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____
                    Date

_____
*Signature of Server*

ARRIOLA, COWAN & ARRIOLA
259 MARTYR STREET, SUITE 201
HAGATNA, GUAM 96910

_____
*Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

Slip Copy, 2007 WL 781969 (N.D.Cal.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
SONY COMPUTER ENTERTAINMENT
AMERICA INC., Plaintiff,
v.
AMERICA MEDICAL RESPONSE, INC.,
Defendant.
No. C06-06603-CW.
March 13, 2007.

Timothy R. Cahn, James G. Gilliland, Marie C. Seibel, Townsend and Townsend and Crew LLP, San Francisco, CA, Daniel J. Herp, Jennifer Y. Liu, Foster City, CA, for Plaintiff. Joseph F. Depumpo, Shore Chan Bragalone LLP, Dallas, TX, Martin C. Fliesler, Fliesler Meyer LLP, San Francisco, CA, for Defendant.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER

CLAUDIA WILKEN, United States District Judge.

*1 Defendant America Medical Response, Inc. (AMR) moves to dismiss or stay this action, or in the alternative, to transfer it to the Eastern District of Texas. Plaintiff Sony Computer Entertainment America Inc. (SCEA) opposes the motion. The matter was heard on March 2, 2007. Having considered all of the papers filed by the parties and oral argument on the motions, the Court DENIES the motions.

BACKGROUND

Defendant learned in April, 2006 that Plaintiff was using Defendant's federally registered AMR trademark on ambulances appearing in Plaintiff's driving video game. Defendant sent a letter dated April 21, 2006 (the April letter) to Plaintiff's registered agent in California, in which it demanded that Plaintiff remove the AMR trademarks from the video game and cease use of all

AMR trademarks. Herp Decl., Ex. A (April 21, 2006 letter from Defendant's attorney Brian C. Clifford to Plaintiff's agent for service of process). Defendant stated in the letter that if Defendant's attorney did not receive a positive response from Plaintiff by May 11, 2006, Defendant's attorney would take all steps necessary to protect Defendant's goodwill. *Id.* On June 19, 2006, having not received a response from Plaintiff, Defendant's attorney faxed to Plaintiff's attorney a copy of the April letter. The parties attempted to resolve the dispute from June to October, 2006, but were unable to do so. Herp Decl. ¶¶ 3-7.

In a letter dated October 6, 2006, Plaintiff proposed to resolve all disputes between the parties by paying $10,000 to Defendant. Murphy Decl., Ex. B (October 6, 2006 letter from Plaintiff's attorney Daniel J. Herp to Clifford). In a letter dated October 11, 2006 (the October letter), Defendant declined the offer to settle and invited Plaintiff to make another offer so that the matter could be resolved. Murphy Decl., Ex. A (October 11, 2006 letter from Clifford to Herp). Enclosed with the letter was a draft complaint. The letter explained that Defendant would not file the complaint for at least ten days, but if Plaintiff did not cease all uses of the AMR marks, the complaint might be filed without further notice. *Id.* After this the parties had no further contact with each other regarding settlement.

Plaintiff filed the present declaratory relief complaint in this Court on Tuesday, October 24, 2006, one business day after the October 21 deadline and informed Defendant that it had done so. Three days later, on October 27, 2006, Defendant filed a trademark infringement suit in the Eastern District of Texas (the Texas case).

The parties do not dispute that the suits in the Northern District of California and the Eastern District of Texas involve the same parties and the same issues. Defendant moves to dismiss or stay this action, arguing that the Court should disregard the first-to-file rule. Defendant alternatively moves to transfer the action to the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a).

## DISCUSSION

**\*2** Defendant argues that the first-to-file rule should be ignored because Plaintiff's suit was anticipatory and that the Court should defer to Defendant's choice of forum. Defendant further argues that the Declaratory Judgment Act is not intended to give an infringer the right to choose the forum for the litigation of an intellectual property owner's rights. Defendant also argues that the balance of convenience and the interests of justice favor the Eastern District of Texas.

Plaintiff counters that Defendant fails to show the anticipatory filing exception to the first-to-file rule (1) because Defendant's communications did not show that the filing of a suit by Defendant was imminent and (2) the anticipatory filing exception to the first-to-file rule should not be applied broadly. Plaintiff also argues that the balance of convenience favors proceeding in the Northern District of California.

### I. First-To-File Rule

"There is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." _Pacesetter Systems, Inc. v. Medtronic, Inc._, 678 F.2d 93, 94-5 (9th Cir.1982). This doctrine, known as the first-to-file rule, "gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." _Northwest Airlines, Inc. v. American Airlines, Inc._, 989 F.2d 1002, 1006 (8th Cir.1993). The rule was developed to "serve [ ] the purpose of promoting efficiency well and should not be disregarded lightly." _Church of Scientology of California v. United States Dep't of Army_, 611 F.2d 738, 750 (9th Cir.1979).

In applying the first-to-file rule, a court looks to three threshold factors: "(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues." _Z-Line Designs, Inc. v. Bell'O Int'l LLC_, 218 F.R.D. 663, 665

(N.D.Cal.2003). If the first-to-file rule does apply to a suit, the court in which the second suit was filed may transfer, stay or dismiss the proceeding in order to allow the court in which the first suit was filed to decide whether to try the case. _Alltrade Inc. v. Uniweld Products, Inc._, 946 F.2d 622, 625 (9th Cir.1991). However, "circumstances in which an exception to the first-to-file rule will typically be made include bad faith, anticipatory suit and forum shopping." _Id._ at 628 (internal citations omitted).

"A suit is anticipatory when the plaintiff filed upon receipt of specific, concrete indications that a suit by defendant was imminent." _Z-Line Designs, Inc._, 218 F.R.D. at 665. "Such anticipatory suits are disfavored because they are examples of forum shopping." _Id._ Furthermore, the Declaratory Judgment Act, 28 U.S.C. § 2201, is not to be invoked to deprive a plaintiff of its choice of forum and timing. _Id._

**\*3** An exception to the first-to-file rule also exists if "the balance of convenience weighs in favor of the later-filed action." _Ward v. Follett Corp._, 158 F.R.D. 645, 648 (N.D.Cal.1994). This is analogous to "the convenience of the parties and witnesses" under a transfer of venue motion, 28 U.S.C. § 1404(a). _Med-Tec Iowa, Inc. v. Nomos Corp._, 76 F.Supp.2d 962 (W.D.Iowa 1999); _800-Flowers, Inc. v. Intercontinental Florist_, 860 F.Supp. 128, 133 (S.D.N.Y.1994). The court with the first-filed action should normally weigh the balance of convenience. _Alltrade Inc._, 946 F.2d at 628.

### A. Anticipatory Filing Exception

Defendant argues that because its October letter provided Plaintiff with specific, concrete indications that a suit was imminent, Plaintiff's filing was anticipatory.

To the contrary, Defendant's October letter did not establish that the suit was imminent. In the October letter, Defendant stated that the enclosed complaint "may be filed" after October 21. Murphy Decl., Ex. A (October 11, 2006, letter from Clifford to Herp). As of October 24, Defendant had not filed suit. Defendant's equivocal language does not establish that a lawsuit was imminent,

especially when Defendant did not file suit after its deadline. *Cf., e.g., Inherent.com v. Martindale-Hubbell,* 420 F.Supp.2d 1093, 1100 (N.D.Cal.2006) (a suit was anticipatory when filed before the end of five days when Martindale-Hubbell made the statement that "a lawsuit will be filed" in five days).

Furthermore, because Defendant's deadline in the April letter passed with no action by Defendant, Plaintiff could not be certain whether Defendant's threat of suit in the October letter was idle, real, or a negotiating tactic.

Defendant, citing *Xoxide, Inc. v. Ford Motor Co.,* 448 F.Supp.2d 1188, 1193 (C.D.Cal.2006), argues that where "a declaratory judgment action has been triggered by a cease and desist letter that both seeks settlement and notifies the party of the possibility of litigation upon collapse of negotiations, equity militates in favor of allowing the second-filed action to proceed to judgment rather than the first" (citation and internal quotations omitted). However, after the October 21 deadline in the October letter passed, negotiations had collapsed, and Defendant still had not filed a suit.

Defendant argues that the purpose of the anticipatory filing exception is "to eliminate the race to the courthouse door in an attempt to preempt a later suit in another forum," *Guthy-Renker Fitness LLC v. Icon Health & Fitness,* 179 F.R.D. 264, 271 (C.D.Cal.1998), and that the Court should not allow Plaintiff's race to the courthouse to supercede its choice of forum as the true plaintiff in this case. Although Plaintiff filed the present action one business day after Defendant's deadline passed, Defendant could have filed its action in the forum of its choice before Plaintiff filed a suit, but did not do so. Even if there was a race to the courthouse door, Plaintiff did not have specific, concrete indications that a suit by Defendant was imminent, the condition necessary for an anticipatory filing exception to the first-to-file rule.

**\*4** The anticipatory filing exception to the first-to-file rule also encourages settlement negotiations and other attempts to resolve lawsuits prior to litigation. *Xoxide, Inc.,* 448 F.Supp.2d at 1193. Defendant argues that

the anticipatory filing exception should apply here because it would have encouraged Plaintiff to negotiate further. However, the parties had been trying to negotiate a settlement for four months. Therefore, settlement negotiations were not deterred by the filing of the lawsuit.

Considering the above analysis, the Court finds that Plaintiff did not have specific, concrete indications that suit by Defendant was imminent from the October letter. After the October 21 deadline passed without Defendant filing suit, Plaintiff filed a declaratory relief complaint pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. The Court concludes that the present suit is not anticipatory and the anticipatory filing exception to the first-to-file rule does not apply.

### B. Convenience Exception

As the court with the first-filed action, this Court can consider the balance of convenience exception to the first-to-file rule. *Alltrade Inc.,* 946 F.2d at 628. The balance of convenience exception to the first-to-file rule includes consideration of the same convenience factors considered under a 28 U.S.C. § 1404(a) transfer of venue motion, which both parties address.

Defendant states that witnesses and information are located in Texas. Defendant is headquartered in Colorado and, even though it does not reside in Texas, it states that Texas is more convenient for it than California. Cahn Dec., Ex. B. However, Plaintiff's headquarters are located in the Northern District of California, making this forum convenient for it. Murphy Decl., Ex. C (Outline of Principal Operations for Sony Computer Entertainment America, Inc.). Plaintiff also notes that Defendant's West Region headquarters are located here and witnesses for each party are in California. Cahn Dec., Ex. B.

On the whole, the balance of convenience does not weigh in favor of the Eastern District of Texas. The Court finds insufficient circumstances to justify an exception to the first-to-file rule based on convenience.

## II. Declaratory Judgment Act

Defendant further argues that the Declaratory Judgment Act, 28 U.S.C. § 2201, is not intended to give an infringer the right to choose the forum for litigation of an intellectual property owner's rights.

The Declaratory Judgment Act permits a federal court to "declare the rights and other legal relations" of parties to "a case of actual controversy." 28 U.S.C. § 2201; see Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 893 (9th Cir.1986). The "actual controversy" requirement of the Declaratory Judgment Act is the same as the "case or controversy" requirement of Article III of the United States Constitution. American States Ins. Co. v. Kearns, 15 F.3d 142, 143 (9th Cir.1993).

**\*5** Under the Declaratory Judgment Act, a two-part test is used to determine whether a declaratory judgment is appropriate. Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 669 (9th Cir.2005). First, the court must determine if an actual case or controversy exists within the court's jurisdiction. Id. Second, if so, the court must decide whether to exercise its jurisdiction. Id.

The Ninth Circuit has stated that trademark disputes have sufficiently ripened into an actual controversy under the Declaratory Judgment Act when " 'the plaintiff has a real and reasonable apprehension that he will be subject to liability.' " Chesebrough-Pond's v. Faberge, 666 F.2d 393, 396 (9th Cir.1982) ( quoting Societe de Conditionnement en Aluminium v. Hunter Engineering Co., 655 F.2d 938, 944 (9th Cir.1981)). In determining "if the threat perceived by the plaintiff is real and reasonable," the court focuses "upon the position and perceptions of the plaintiff" and "[t]he acts of the defendant [are] ... examined in view of their likely impact on competition and the risks imposed upon the plaintiff." Id. If the plaintiff is engaged in the ongoing use of the allegedly infringing trademark, the showing of apprehension "need not be substantial." Societe de Conditionnement en Aluminium, 655 F.2d at 944.

In Brillhart v. Excess Ins. Co. of America,

316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), the Supreme Court identified several factors for the district court to consider when determining whether to exercise jurisdiction over a declaratory judgment action, and the Ninth Circuit has affirmed that "the Brillhart factors remain the philosophical touchstone for the district court." Government Employees Ins. Co. v. Dizol, 133 F.3d 1202, 1225 (9th Cir.1998). "The district court should avoid needless determination of State law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." Id. (internal citations omitted). The Ninth Circuit has also "suggested other considerations" in addition to the Brillhart factors that may assist in deciding whether to exercise jurisdiction, including:

[W]hether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a "res judicata" advantage; or whether the use of a declaratory action will result in entanglement between the federal and State court systems.

Id.

Under the Ninth Circuit test to determine whether a declaratory judgment is appropriate, the Court must first determine if an actual case or controversy exists within this jurisdiction. Here, Defendant accused Plaintiff of using Defendant's trademark. Defendant threatened legal action against Plaintiff. Plaintiff perceived the possibility a future suit. A suit against Plaintiff would be a risk to future sales of Plaintiff's video game with the allegedly infringing trademark. Furthermore, Plaintiff is allegedly engaged in the ongoing use of the allegedly infringing trademark. Thus, the dispute has sufficiently ripened in that Plaintiff had a real and reasonable apprehension that it would be subject to liability. Chesebrough-Pond's, 666 F.2d at 396.

**\*6** The Court considers the Brillhart and the Government Employees Ins. Co. factors in

determining whether to exercise its jurisdiction over this declaratory judgment action. The factors that weigh in favor of the Court's exercising its jurisdiction are: there are no state law issues in the present case, only federal trademark issues; there would be no entanglement between the federal and state court systems because trademark issues fall under federal jurisdiction; the present declaratory judgment action would avoid duplicative litigation because the present action has proceeded further than the Texas action. Also, except for monetary damages, this declaratory action would "settle all aspects of the controversy" and "serve a useful purpose in clarifying the legal relations at issue."

One factor weighs against the Court exercising its jurisdiction. The present declaratory judgment action can be viewed as an instance of forum shopping. However, as discussed above, even if Plaintiff filed the present action only one business day after Defendant's deadline passed, Defendant had the opportunity to file an action in its choice of forum. Furthermore, a party's choice of forum is entitled to less weight if it is not the party's home state. C.f. Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League, 89 F.R.D. 497, 499 (C.D.Cal.1981) (citing Pacific Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir.1968)).

Defendant argues that the Court should follow the holding in Tempco Elec. Heater Corp. v. Omega Eng'g, 819 F.2d 746 (7th Cir.1987), a trademark infringement case. Tempco Elec. Heater Corp. stands for the proposition that where a declaratory judgment action is filed in anticipation of an infringement action, the infringement action should be heard first because the courts should not encourage a race to the courthouse. However, Tempco Elec. Heater Corp. is a Seventh Circuit case and is not binding authority on the Court.

Defendant also cites two district court cases in the Ninth Circuit that followed Tempco Elec. Heater Corp. See Xoxide, Inc., 448 F.Supp.2d at 1193 (a trademark case in which the court dismissed the first-filed declaratory judgment suit); see also First Fishery Development Service, Inc. v. Lane Labs USA, 1997 WL 579165 (S.D.Cal.1997)

(a case involving false statements about defendant's products published in a trade magazine in which the court dismissed the first-filed suit). These cases are not binding authority on the Court, either.

Based on the above analysis, the Court concludes that the present suit is a proper use of the Declaratory Judgment Act, 28 U.S.C. § 2201, to resolve the trademark infringement claims raised by Defendant.

### III. Motion To Stay

In the event the Court decides not to dismiss the present action, Defendant moves to stay the proceedings until the Texas action is resolved. However, as discussed above, it is appropriate for the present action to proceed under the first-to-file rule and the Declaratory Judgement Act. Therefore, Defendant's motion to stay is denied.

### IV. Transfer Of Venue

**\*7** Defendant argues that the case should be transferred to the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a) because of convenience of the parties and witnesses and the interests of justice.

Title 28 U.S.C. § 1404(a) provides, "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A district court has broad discretion to adjudicate motions for transfer on a case-by-case basis, considering factors of convenience and fairness. Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); Sparling v. Hoffman Constr. Co., 864 F.2d 635, 639 (9th Cir.1988). The movant bears the burden of justifying the transfer by a strong showing of inconvenience. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir.1986). The motion may be denied if the increased convenience to one party is offset by the added inconvenience to the other party. Id.

When adjudicating a motion to transfer

venue under 28 U.S.C. § 1404(a), a district court must balance a of number case-specific factors, including the plaintiff's initial choice of forum, convenience of the parties and witnesses, and the interest of justice. _Steward Org._, 487 U.S. at 29; _Decker Coal Co._, 805 F.2d at 842-43; _Los Angeles Mem'l Coliseum Comm'n_, 89 F.R.D. at 499. As a general rule, the plaintiff's choice of forum is given significant weight and will not be disturbed unless other factors weigh substantially in favor of transfer. _See_ 28 U.S.C. § 1404(a). This is especially true when the forum chosen by the plaintiff is its domicile. _Los Angeles Mem'l Coliseum Comm'n_, 89 F.R.D. at 499 (citing _Pacific Car & Foundry Co._, 403 F.2d at 954).

A case may be transferred for convenience only to a venue in which it could have originally been brought. 28 U.S.C. § 1404(a). In the present case, the parties do not dispute that venue is proper in the Eastern District of Texas.

Based on Plaintiff's real and reasonable apprehension that it would be subject to liability, it properly filed the present declaratory judgment suit in this district, where it resides. Therefore, Plaintiff's choice of forum weighs heavily in favor of not transferring this case to the Eastern District of Texas. As discussed above, Defendant had not met its burden of showing that the convenience of the parties and witnesses weighs in favor of the Eastern District of Texas. While Defendant's choice of forum is the Eastern District of Texas, it does not reside there so its preference is weighed less heavily.

### CONCLUSION

For the foregoing reasons, the Court does not find an exception to the first-to-file rule. Thus, the Court will not dismiss or stay the present action. Furthermore, the Court will not transfer the present action. Defendant's motion to dismiss or stay, or alternatively to transfer the action, is DENIED.

**\*8** IT IS SO ORDERED.

N.D.Cal.,2007.
Sony Computer Entertainment America Inc.

v. America Medical Response, Inc.
Slip Copy, 2007 WL 781969 (N.D.Cal.)

Motions, Pleadings and Filings (Back to top)

• 2007 WL 616465 (Trial Filing) Joint Case Management Conference Statement and Proposed Order (Feb. 2, 2007)
• 2006 WL 3954312 (Verdict, Agreement and Settlement) Stipulation to Extend the Time for Defendant to Answer or Otherwise Respond to Plaintiff's Complaint (Dec. 14, 2006) 🖼 Original Image of this Document (PDF)
• 4:06cv06603 (Docket) (Oct. 24, 2006)
END OF DOCUMENT

Not Reported in F.Supp.2d, 2003 WL
22794987 (E.D.Pa.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently
available.

United States District Court,

E.D. Pennsylvania.

RJF HOLDINGS III, INC.
v.
REFRACTEC, INC.
and
KREMER LASER EYE CENTER, INC.

No. Civ.A. 03-1600.

Nov. 24, 2003.

*MEMORANDUM AND ORDER*

SURRICK, J.

*1 Presently before the Court are
Defendants' Motion to Dismiss Or, In the
Alternative, To Transfer or Stay (Doc. No.
4), and Plaintiff's Motion to Strike Certain
Portions of Defendants' Reply Brief to
Plaintiff's Opposition to Defendants' Motion
to Dismiss Or, In the Alternative, To
Transfer or Stay (Doc. No. 9). For the
following reasons, Defendants' Motion will
be granted and Plaintiff's Motion will be
denied.

Background

This is a patent infringement action. Plaintiff
alleges that Defendant Refractec, Inc.
("Refractec") a California company
headquartered in California, is the
manufacturer of a device for performing
ocular surgery known as the ViewPoint CK.
Refractec sold ViewPoint CK devices to
various doctors, hospitals, and eye clinics
across the country. Defendant Kremer Laser
Eye Surgery, Inc. ("Kremer"), a company
that operates eye surgery centers located
primarily in Pennsylvania, New Jersey, and
Delaware, purchased ViewPoint CK
devices, which it uses to perform eye
operations. Plaintiff alleges that Kremer's
use of the ViewPoint CK devices directly
infringes two of its patents: U.S. Patent No.
5,413,574, entitled "Method of
Radiosurgery of the Eye" (the " '574
Patent"), and U.S. Patent No. 5,423,815,
entitled "Method of Ocular Refractive
Surgery" (the " '815 Patent"). Plaintiff also
alleges that Refractec is inducing
infringement of both patents through its
manufacture and distribution of the
ViewPoint CK devices.

Dr. Richard J. Fugo, a resident of
Pennsylvania, is the inventor of the '574
Patent and '815 Patent. Both patents were
granted to Fugo in 1995. On April 13, 1999,
representatives of Fugo sent a letter to
Refractec stating Fugo's belief that Refractec
was infringing Fugo's patents. (Doc. No. 8,
Def.'s Reply to Mot. to Dis. Ex. B.) The
letter requested that Refractec cease and
desist. Over the next few years, Fugo and
Refractec attempted to negotiate a licensing
agreement that would give Refractec the
right to use the '815 Patent in exchange for
royalty payments. When they were unable to
come to an agreement, Refractec filed an
action in the District Court for the Central
District of California against the then-owner
of the '815 Patent, Fugo, seeking a
declaration that Refractec was not infringing
the '815 Patent (the "California Action").

The California Action was filed on March 6, 2003. (Doc. No. 4, Def.'s Mot. to Dis. Ex. A.) On March 11, 2003, Fugo transferred ownership of the '574 Patent and '815 Patent to Plaintiff, a holding company that he apparently created and owns. (Doc. No. 13, Pl.'s Reply to Mot. to Strike Ex. A & B.) On March 14, 2003, Plaintiff, a Delaware company headquartered in Pennsylvania, filed this action alleging infringement of the '574 Patent and '815 Patent and seeking declaratory and injunctive relief, and damages.

On April 3, 2003, after Plaintiff filed this action, Refractec amended its complaint in the California Action. In the amended complaint, Kremer joins Refractec as a plaintiff. Each seeks a declaration that they are not infringing the '574 Patent and '815 Patent. The amended complaint also names RJF Holdings III, Inc. ("RJF"), the present owner of the patents, as a defendant.

### Discussion

### I. The First to File Rule

*2 Defendants request that we stay, dismiss or transfer this action pursuant to the well-recognized doctrine of federal comity known as the "first-to-file" rule. *See E.E.O.C. v. University of Pa.,* 850 F.2d 969, 971-72 (3d Cir.1988). The question of whether a patent infringement suit, like this one, should yield to a previously filed declaratory action asserting the same patent rights "raises the issue of national uniformity in patent cases," and therefore requires application of Federal Circuit caselaw. *See Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed.Cir.1993),

*abrogated on other grounds by Wilton v. Seven Falls Co.,* 515 U.S. 277 (1995). The Federal Circuit applies the "general rule whereby the forum of the first-filed case is favored, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise." *Id.* Exceptions to the general rule are not rare. However, there "must be sound reason that would make it unjust or inefficient to continue the first-filed action. Such reason may be the convenience and availability of witnesses, or absence of jurisdiction over necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Id.* (citing *Kahn v. General Motors Corp.,* 889 F.2d 1078, 1081-83 (Fed.Cir.1989)).

### II. Analysis

Even though the complaint in the California Action did not initially name two of the parties to the present action, the subsequent amendment of that complaint does not affect its status as the first-filed action. "The first-filed rule turns on which court first obtains possession of the subject of the dispute, not the parties of the dispute." *Advanta Corp. v. Visa U.S.A., Inc.,* No. 96-7940, 1997 WL 88906, at *3 (E.D.Pa. Feb. 19, 1997). *See also Kahn,* 889 F.2d at 1082-83 (applying first-to-file rule even though different parties named in the competing actions); *Whelan v. United Pac. Indus., Inc.,* No. 02-2519, 2002 WL 31513432, at *2 (E.D.Pa. Nov. 1, 2002) (holding that "[a]lthough plaintiffs argue that the California complaint failed to name the patent owners as parties to the declaratory judgment action, such an easily correctable oversight does not prevent this Court from deferring to the first-filed suit"); *National Foam, Inc. v. Williams Fire & Hazard Control, Inc.,* No. 97-3105, 1997

WL 700496, at *1-2 (E.D.Pa. Oct. 29, 1997) (applying first-to-file rule even though defendant not named in initial complaint because the defendant "should have known that but for a mistake concerning the identity of the proper party, the initial complaint would have been brought against it") (quotations omitted). Plaintiff does not dispute that the subject of the California Action and this case are the same.<u>FN1</u> Accordingly, unless Plaintiff can show that an exception to the first-to-file rule applies, we will defer to the California Action.

> FN1. Indeed, all of Plaintiff's infringement claims are compulsory counterclaims to the claims in the California Action. *See Vivid Techs., Inc. v. American Sci. Eng'g, Inc.*, 200 F.3d 795, 802 (Fed.Cir.1999) ("[I]t is generally recognized that when the same patent is at issue in an action for declaration of non-infringement, a counterclaim for patent infringement is compulsory and if not made is deemed waived.").

*3 In arguing that an exception to the first-to-file rule applies, Plaintiff principally relies on *Serco Services Co. v. Kelley Co.*, 51 F.3d 1037 (Fed.Cir.1995). In *Serco*, Kelley Company, Inc. ("Kelley"), sent Serco Services Company, Inc. ("Serco"), a letter asserting that Serco was infringing Kelley's patent. The letter demanded a reply and threatened legal action. Serco failed to reply, but Kelley did not file a patent infringement action. Several months later, Kelley sent Serco a second letter, dated September 8, 1993, demanding that Serco respond by September 20 or face a patent infringement suit. On September 20, Serco responded by letter denying Kelley's infringement claims. Meanwhile, on September 17, Serco had filed an action in the District Court for the Northern District of Texas seeking a

declaration that it was not infringing Kelley's patent. On September 20, Kelley filed a patent infringement suit against Serco in the District Court for the Eastern District of Wisconsin. Kelley later filed a motion in the federal court in Texas to dismiss the Texas declaratory action, arguing that the Texas action was filed in anticipation of Kelley's infringement action, and that convenience factors favored litigating the parties' dispute in Wisconsin. The court agreed and dismissed the Texas action.

On appeal, the Federal Circuit ruled that the district court had not abused its discretion in dismissing the Texas action. The court noted the general rule that the first-filed action is normally preferred. *Serco*, 51 F.3d at 1039. In *Serco*, however, two factors supported dismissing the first-filed suit. First, the district court's determination that the Texas action was anticipatory was a factor weighing in favor of its dismissal, even though the impact of forum shopping in patent cases has been tempered by the creation of the Court of Appeals for the Federal Circuit. *Id.* at 1040. Independently, however, the Federal Circuit found that the presence of convenience factors favoring the Wisconsin action was "sound reason" to dismiss the first-filed Texas action. The court noted that all of Kelley's witnesses were located in Wisconsin, while Serco's witnesses were scattered throughout the country. Also, while some of Serco's documents were located at its Canadian headquarters, all of Kelley's documents were located in Wisconsin. The presence of these convenience factors supported the court's decision to dismiss the first-filed Texas action. *Id.*

The circumstances in this case differ from those in *Serco* in several respects. First of all, the California Action is not anticipatory in the same sense that the Texas action was

anticipatory in *Serco.* In that case, Serco filed the Texas action knowing that a patent infringement action against it by Kelley was imminent. Thus, Serco engaged in forum shopping, a fact that was properly considered by the district court as a factor weighing in favor of dismissing the Texas action.

*4 In this case, we cannot conclude that Refractec engaged in forum shopping. Plaintiff has presented no evidence to suggest that Refractec knew that a patent infringement action by Plaintiff was imminent at the time Refractec filed the California Action. To the contrary, Plaintiff argues in its opposition brief that "[a]t the time Refractec filed the California Action (i.e., March 6, 2003), it was not in reasonable apprehension of [a patent infringement] suit from Dr. Fugo or RJF." [FN2] (Doc. No. 7, Pl.'s Opp. to Mot. to Dis. at 17.) Thus, we cannot conclude that the California Action was anticipatory.

> FN2. Plaintiff makes this statement in support of its argument that the California Court lacks subject matter jurisdiction over the California Action, a topic on which we express no opinion.

This case is also different from *Serco* in that convenience factors do not favor litigating this dispute in Pennsylvania. If anything, convenience factors favor litigating this dispute in California. California is the location of the allegedly infringing manufacturer, Refractec, as well as the documents, manufacturing equipment, and witnesses responsible for the design, manufacture, and sale of the allegedly infringing product, the ViewPoint CK device. (Def.'s Mot. to Dis., Decl. of Peter T. Christensen ¶¶ 2, 4.) Plaintiff argues that convenience factors favor Pennsylvania

because the doctors working for Kremer are located there and the doctors' testimony will be crucial in establishing direct infringement of Plaintiff's patents. [FN3] However, Defendants point out that the manner in which the ViewPoint CK devices are utilized for surgery is carefully prescribed in instructions and materials developed and distributed by Refractec, and that all of these materials emanate from Refractec's California headquarters. (Def.'s Reply to Mot. to Dis., Decl. of Mitch Campbell ¶ 5.) In sum, while Pennsylvania may be *a* convenient forum for this dispute, it is not clear to us that it is more convenient than California. We will not defer to a later-filed action when to do so "merely serves to shift inconveniences from one party to another." *Kahn,* 889 F.2d at 1083 (quoting *Weight Watchers Int'l v. The Stouffer Corp.,* No. 88-7062, 1989 WL 73292, at *4 (S.D.N.Y. June 28, 1989)).

> FN3. This is because Plaintiff claims the use of the ViewPoint CK devices directly infringes its patents, rather than the manufacture of the devices.

Finally, Plaintiff argues that Pennsylvania is a more appropriate forum for this dispute because the California court lacks both personal jurisdiction over RJF, and subject matter jurisdiction over the Defendants' declaratory judgment action. Our review of the docket in the California Action reveals that the defendants there have not answered or otherwise responded to the complaint. Objections to the jurisdiction of the California court should be presented to and decided by that court. *See Peregrine Corp. v. Peregrine Indus., Inc.,* 769 F.Supp. 169, 173 (E.D.Pa.1991); *Enzo Biochem, Inc. v. Calgene, Inc.,* No. 93-110-JJF, 1993 WL 266515, at *2 (D.Del. May 18, 1993). If it turns out that the California court lacks jurisdiction over a necessary party or the

subject matter of that action, then we may reconsider our decision to stay this action. Until that determination is made, we conclude that this matter should be stayed.[FN4] An appropriate order follows.

> FN4. Though Plaintiff moved to strike certain portions of Defendants' reply brief, the objected to portions were not necessary or considered for this decision. Accordingly, Plaintiff's motion to strike is denied as moot.

## ORDER

*5 AND NOW, this 24 day of November, 2003, upon consideration of Defendants' Motion to Dismiss Or, In the Alternative, To Transfer or Stay (Doc. No. 4), and Plaintiff's Motion to Strike Certain Portions of Defendants' Reply Brief to Plaintiff's Opposition to Defendants' Motion to Dismiss Or, In the Alternative, To Transfer or Stay (Doc. No. 9), and all papers filed in support thereof and in opposition thereto it is ORDERED as follows:

1. Defendants' Motion to Stay is GRANTED. This case shall be STAYED and placed on the Civil Suspense Docket until further order of the Court.

2. Plaintiff's Motion to Strike is DENIED as MOOT.

IT IS SO ORDERED.

E.D.Pa.,2003.
RJF Holdings III, Inc. v. Refractec, Inc.
Not Reported in F.Supp.2d, 2003 WL 22794987 (E.D.Pa.)

Motions, Pleadings and Filings (Back to top)

• 2:03cv01600 (Docket) (Mar. 14, 2003)
END OF DOCUMENT

## DECLARATION OF SERVICE

I, Meredith M. Sayre, hereby declare under penalty of perjury of the laws of the United States, that on May 1, 2007, I caused to be served, via hand delivery, a true and correct copy of DEFENDANT BANK OF HAWAII'S MOTION TO DISMISS OR STAY COMPLAINT, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE; MEMORANDUM IN SUPPORT OF MOTION; EXHIBIT "A" AND "B"; DECLARATION OF MEREDITH M. SAYRE; EXHIBITS "C" - "D"; DECLARATION OF SERVICE upon Plaintiff's counsel of record as follows:

> ANITA P. ARRIOLA, ESQ.
> JOAQUIN C. ARRIOLA, ESQ.
> MARK E. COWAN, ESQ.
> Arriola, Cowan & Arriola
> 259 Martyr Street, Suite 201
> Hagåtña, Guam 96910
>
> **Attorneys for Plaintiff**
> **BANK OF GUAM**

Executed this 1st day of May, 2007 at Hagåtña, Guam.

_____
MEREDITH M. SAYRE