CARLSMITH BALL LLP

KATHERINE G. LEONARD
 *(Admitted Pro Hac Vice)*
MEREDITH M. SAYRE
ELYZE J. MCDONALD
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813

Attorneys for Defendant
BANK OF HAWAII



**FILED**
DISTRICT COURT OF GUAM
JUL 26 2007
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| BANK OF GUAM, a Guam banking corporation,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF HAWAII, a Hawaii banking corporation,<br><br>Defendant. | CIVIL CASE NO. 07-00007<br><br>**COUNTERCLAIMANT BANK OF HAWAII'S COUNTERCLAIM; DECLARATION OF SERVICE** |
| BANK OF HAWAII, a Hawaii banking corporation,<br><br>Counterclaimant,<br><br>vs.<br><br>BANK OF GUAM, a Guam banking corporation,<br><br>Counterclaim-Defendant. | |

4815-5884-0321.1.010028-02707

ORIGINAL

## COUNTERCLAIM

Counterclaimant BANK OF HAWAII ("BOH"), by and through its attorneys, Carlsmith Ball LLP, hereby avers and alleges as follows based upon BOH's information and belief:

## PARTIES

1.      BOH is, and was at all times relevant herein, a Hawaii banking corporation duly authorized to do business in, and chartered by, the State of Hawaii whose principal place of business is 111 South King Street, Honolulu, Hawaii, 96813.

2.      Counterclaim-defendant BANK OF GUAM ("BOG") is, and was at all times relevant herein, a banking corporation duly authorized to do business in the Territory of Guam whose principal place of business is in Hagåtña, Guam.

## FACTS

### The IDS Check Kiting Scheme

3.      This dispute arises from a long-running "check kiting" scheme by one or more persons acting for or through a BOG customer.

4.      Jale Management Information and Data Services, Inc., dba Information and Data Services ("IDS"), is or was a payroll company, based in Guam.

5.      IDS provided payroll management services to employers, including forwarding taxes withheld from employees to the appropriate taxing authorities on behalf of its employer-clients.

6.      At the time of the transactions alleged in this Counterclaim, IDS was an account holder at both BOG and BOH.

7.      At the time of the transactions alleged in this Counterclaim, IDS engaged in transactions involving its accounts at BOH through the use of checks and automated clearing house ("ACH") transactions.

4815-5884-0321 1.010028-02707

8.      ACH transactions involve the ACH system, which is a system used in interstate commerce to provide electronic funds transfers.

9.      ACH transactions are governed by rules and related guidance (the "ACH Rules") issued and administered by the National Automated Clearing House Association ("NACHA").

10.     Check kiting is a form of fraud that involves depositing and withdrawing funds between accounts with different banks and thereby taking advantage of the "float" time. Float time is the time it takes the bank of deposit to collect from the paying bank. Check kiting attempts to obtain funds that are not actually in the account of the paying bank, before the lack of funds is detected.

11.     Check kiting is a criminal offense under United States federal law. 18 U.S.C. § 1344 (Federal Bank Fraud Statute).

12.     In the present case, one or more persons acting for or through IDS used checks and ACH transactions to draw funds against accounts containing uncollected funds or having negative balances at either BOG or BOH.

## BOG's Knowledge of the IDS Check Kiting Scheme

13.     In or before August 2006, BOG began investigating the possible existence of check kiting activities by a person or persons acting for or through IDS.

14.     In August 2006, Josephine Mariano, Vice President and Branch and Central Operations Administrator for BOG, met with IDS President Romy Miclat, to discuss an number of unnecessary transfers between various bank accounts, specifically including accounts at BOG and BOH.

15.     Numerous unnecessary transfers between accounts is a common indicator of check kiting and bank fraud.

Page 3 of 22

4815-5884-0321.1 010028-02707

16.    Before September 28, 2006, BOG knew, or given its prior investigations should have been aware, that transactions IDS originated through its accounts at BOG, debiting its accounts at BOH, were improper and constituted an the illegal and fraudulent check kiting scheme.

17.    On September 28, September 29, and October 2, 2006, BOG originated ACH transactions on behalf of IDS in the amounts of $754,635.45, $751,001.15, and $768,268.99, respectively (the "IDS Transactions").    The IDS Transactions totaled $2,273,905.59.

18.    The IDS Transactions involved the transfer of funds to IDS's accounts at BOG by debiting IDS's accounts at BOH at a time when those accounts did not contain sufficient collected funds to cover all of the debits.

19.    Banks commonly allow customers to draw on accounts at a time when accounts do not contain sufficient funds, where a long-term account relationship exists.

20.    The IDS Transactions were posted by BOH to the accounts of IDS on September 29, October 2, and October 3, 2006.

21.    As defined in the ACH Rules, for purposes of the IDS Transactions, IDS was both the "Originator" and "Receiver" for the transactions, BOG was the "Originating Depository Financial Institution" ("ODFI"), and BOH was the "Receiving Depository Financial Institution ("RDFI").

22.    BOG, as an ODFI, expressly or impliedly agreed that entries through the ACH system may not be initiated that violate the laws of the United States.

23.    BOG, as the ODFI, expressly or impliedly agreed that it was responsible for transmitting entries through the ACH system on behalf of the Originator, IDS.

4815-5884-0321.1 010028-02707

24.     BOG, as the ODFI, expressly or impliedly agreed that it was responsible for monitoring its Originator's compliance with the ACH Rules.

25.     Under the ACH Rules, BOG, as ODFI for the ACH transactions described in this Counterclaim, including the IDS Transactions, provided specific warranties to BOH, as RDFI for such transactions.

26.     BOG agreed that, in the event that any of its ODFI warranties are breached, it is required to indemnify every RDFI for any resulting loss, including attorneys' fees and costs.

27.     Under the NACHA regulatory scheme, as explicated in NACHA's Operating Guidelines, the ODFI's warranties are intended to place the risk of an Originator's unlawful business practices squarely upon the ODFI. NACHA Operating Guidelines state:

> In an environment where an increasing number of ... transactions arising from deceptive business practices are being made over the ACH Network, it is becoming more and more critical that financial institutions take proactive steps to safeguard their financial assets as well as their reputations. One fundamental step toward this goal is to ensure that ODFIs know their customers. To protect themselves against financial loss, ODFIs must ensure that their Originators are credit-worthy.
>
> ***
>
> ODFIs must ensure that they have thoroughly evaluated the risks and potential liabilities of granting direct access to the ACH Operator before giving any customer such capabilities.

NACHA Operating Guidelines, Section II.C.3 (emphasis added).

28.     Under Subsection 2.2.1.1 of the ACH Rules, BOG warranted that each ACH entry it transmitted was in accordance with proper authorization provided by both the Originator and the Receiver.

4815-5884-0321.1.010028-02707

29. Under Subsection 2.2.1.3 of the ACH Rules, BOG warranted that, for each ACH entry it transmitted, all applicable prerequisites to origination had been satisfied, the entry was not reinitiated in violation of applicable ACH Rules, and the entry otherwise complied with all ACH Rules.

30. Under Subsection 2.2.1.5 of the ACH Rules, BOG warranted that at the time the entries were processed by BOH, the authorizations for those entries had not been terminated, in whole or in part, by operation of law.

31. Under Section 2.2.1.12 of the ACH Rules BOG warranted that, at the time the subject entries were transmitted to BOH, it was in compliance with the audit compliance requirements of the ACH Rules.

32. As a result of BOG's knowledge of the check kiting scheme, before and at the time the IDS Transactions were originated, BOG knew, or given its prior investigations should have been aware, that the IDS Transactions violated the laws of the United States and therefore BOG could not in good faith give the warranties it owed to BOH under the ACH Rules.

33. BOG acted with malice, intent, knowledge, and/or with extreme departure from the standards of ordinary care in making the foregoing warranties and representations that the IDS Transactions and the other transactions described herein were properly authorized and not fraudulent.

## BOH's Return of IDS Transactions

34. On or about October 3, 2006, Josephine Mariano, Vice President of BOG, met with one or more officers of IDS and accused them of kiting checks between BOG and BOH, and further instructed them not to issue any more transfer checks drawn on BOG.

35. On or about October 4, 2006, Romy Miclat went to Josephine Mariano's office at BOG and admitted using millions of dollars in uncollected funds on IDS accounts to

4815-5884-0321.1 010028-02707

Case 1:07-cv-00007    Document 26    Filed 07/26/2007    Page 6 of 23

finance other businesses. Ms. Mariano informed Mr. Miclat that such activities were against the law.

36.     On October 5, 2006, BOG first advised BOH of the check kiting scheme.

37.     Either intentionally or with reckless disregard of the truth or falsity of its ODFI warranties and representations described above, BOG waited until all of the IDS Transactions had been completed before advising BOH of IDS's check kiting scheme.

38.     The IDS Transactions were returned by BOH on October 13, 2006.

39.     BOH attempted to obtain a written statement under penalty of perjury from IDS ("Statement") to support its return of the IDS Transactions, including by contacting IDS's President, Mr. Romy Miclat, and attempting to contact Teofista F. Dulay, who served as the IDS Controller from June 1, 1999 through October 9, 2006.

40.     Mr. Miclat, whom BOH is informed and on that basis believes was or may have been a principal participant in the check kiting scheme, refused to provide a Statement, invoking his Fifth Amendment rights through counsel.

41.     Because IDS was both the Originator and Receiver of the IDS Transactions, BOH's task of obtaining a Statement from IDS was effectively impossible in that IDS, as the Receiver, was asked to revoke authorization for itself to originate the transactions; this would have effectively required IDS officials to admit, in a sworn Statement, they had committed a fraud by originating the transactions.

42.     Although BOH was unable, despite its best efforts, to obtain a Statement, it supplied an affidavit of an officer of BOH in its place to support the return of the IDS Transactions (the "Affidavit").

4815-5884-0321.1.010028-02707

43.     The Affidavit described an October 12, 2006 interview with Teofista F. Dulay (IDS Controller from June 1, 1999 to October 9, 2006). The interview took place in offices of the FBI with FBI agents present.

44.     In the interview, the former IDS Controller described the ongoing check kiting scheme at IDS and efforts of BOG dating back to August 2006 to obtain information about suspicious activity at IDS. She stated that Josephine Mariano of BOG tried to set up meetings with Romy Miclat in August, but that Romy Miclat had been unavailable, and in September, but the meeting was cancelled because Ms. Mariano had to fly to Palau for other business instead. According to the former Controller, on October 3, 2006, Mr. Miclat was again unavailable and Ms. Mariano met with other IDS officials and informed them that BOG had detected suspicious activity on the part of IDS and IDS would not be allowed to continue bank transactions with checks and ACH debits to and from BOH.

45.     The Affidavit also provided additional information about IDS's check kiting scheme, the use of ACH transactions originated by BOG as an integral part of that scheme, and the inability of BOH to obtain any information about the scheme or a Statement from IDS, including Mr. Miclat's exercising his right against self-incrimination under the Fifth Amendment.

46.     On March 27, 2007, in a sworn statement, Federal Bureau of Investigation Special Agent Kenneth Klocke reported on his interview with Josephine Mariano, Vice President, Branch and Central Operations Administrator, Bank of Guam, including (1) that Ms. Mariano informed him that, in August of 2006, she discussed with Romy Miclat, the unusual number of unnecessary transfers between the IDS Accounts at BOG and BOH, (2) details of Ms. Mariano's visit to the IDS office on October 3, 2006, including her accusation that IDS was

4815-5884-0321.1.010028-02707

involved in check kiting between BOG and BOH, and (3) details of Ms. Mariano's October 4, 2006 conversation with Romy Miclat, wherein she noted the illegality of his activities and he acknowledged that he knew this.

47. BOH's returns of the IDS Transactions were received by BOG on October 16, 2006.

48. BOH received a credit from BOG in the amount of $2,273,905.59.

49. BOH applied the credit to offset the overdraft positions in IDS's accounts at BOH. The amount of $143,067.34 remained after the offsets.

### BOG's Further Attempt to Originate the IDS Transactions

50. On October 16, 2006, after BOH had returned the IDS Transactions, an unidentified party attempted to originate new transactions (the "Failed Transactions") in the form of ACH debits, through BOG, in the exact amounts of the IDS Transactions; the newly originated transactions were promptly rejected by BOH.

51. Either: (a) one or more persons was acting for or through IDS responsible for the attempt to originate the Failed Transactions and, therefore, BOG was still allowing IDS to use the ACH system well after the check kiting scheme had been discovered; or (b) BOG originated the Failed Transactions itself in an attempt to wrongfully recover the returned funds.

52. Under Subsection 6.1.7 of the ACH Rules, "an entry that has been returned may not be reinitiated unless (1) the entry has been returned for insufficient or uncollected funds; (2) the entry has been returned for stopped payment and reinitiation has been authorized by the Receiver; or (3) the ODFI has taken corrective action to remedy the reason for the return."

53. Under Subsection 6.2.3 of the ACH Rules, "[a]n ODFI may not contest a dishonored return received from an RDFI by reinitiating the entry."

4815-5884-0321.1.010028-02707

54.    BOG reinitiated or allowed the reinitiation of the Failed Transaction in contravention of the ACH Rules.

### DeWitt Transaction

55.    DeWitt Transportation Services of Guam, Inc. ("DeWitt") relied upon IDS to perform payroll processing and tax-withholding functions.

56.    At the time of the transactions alleged in this Counterclaim, DeWitt was an account holder at BOH.

57.    On October 4, 2006, BOG originated an ACH transaction on behalf of IDS totaling $17,362.03 (the "DeWitt Transaction"), debiting DeWitt's account at BOH.

58.    Either intentionally or with reckless disregard of the truth or falsity of its ODFI warranties described above, BOG waited until the Dewitt Transaction had been completed before advising BOH of IDS's check kiting scheme.

59.    BOG acted with malice, intent, knowledge, and/or with extreme departure from the standards of ordinary care in making representations and warranties that the DeWitt Transaction was properly authorized and not fraudulent.

60.    At the same time BOH learned of the IDS kiting scheme, word of potential improprieties was also becoming known to IDS customers.

61.    On October 17, 2006, DeWitt contacted BOH regarding its ACH debits to IDS and expressed concern that its payroll taxes would not be paid as a result of the IDS misconduct. DeWitt further expressed its intent to revoke its most recent debit transactions to IDS and requested that IDS be barred from debiting its accounts in the future.

62.    At DeWitt's request, BOH provided DeWitt with the appropriate written statement under penalty of perjury revoking IDS authorization to debit DeWitt accounts at BOH, which DeWitt executed on October 17, 2006 ("DeWitt Statement").

63.     In light of DeWitt's request and the DeWitt Statement, BOH returned the DeWitt Transaction to BOG on October 20, 2006.

64.     BOG has demanded that BOH return the $17,362.03.

### GHH Transactions

65.     Davinci-RP Operating Lessee, Inc. dba Hilton Guam Resort and Spa ("GHH") relied upon IDS to perform payroll processing and tax-withholding functions.

66.     At the time of the transactions alleged in this Counterclaim, GHH was an account holder at BOH.

67.     On October 5, 2006, BOG originated three ACH transactions on behalf of IDS totaling $92,250.56 (the "GHH Transactions"), debiting GHH's account at BOH.

68.     Either intentionally or with reckless disregard of the truth or falsity of its ODFI warranties described above, BOG waited until the GHH Transactions had been completed before advising BOH of IDS's check kiting scheme.

69.     BOG acted with malice, intent, knowledge, and/or with extreme departure from the standards of ordinary care in making representations that the GHH Transactions were properly authorized and not fraudulent.

70.     On October 27, 2006, GHH executed a written statement under penalty of perjury ("GHH Statement") revoking IDS authorization to debit GHH accounts at BOH, as of October 10, 2006.

71.     In light of the GHH Statement, BOH returned the GHH Transactions to BOG on October 30, 2006.

72.     BOG has demanded that BOH return the $92,250.56.

### BOG's Continuing Efforts to Frustrate Return of Transactions

4815-5884-0321.1.010028-02707

73.    BOG filed Reports of Possible Rules Violations, dated December 1, 2006 ("Reports") with NACHA, in Herndon, Virginia. The Reports alleged that BOH improperly executed the returns of the IDS Transactions, the DeWitt Transaction, and the GHII Transactions (hereinafter collectively referred to as the "Relevant ACH Transactions").

74.    In the Reports, BOG claimed that BOH was not entitled to return the Relevant ACH Transactions after discovering the check kiting scheme.

75.    In the Reports, BOG admitted that at least the IDS Transactions were part of a long established pattern of "check kiting" and fraudulent ACH transactions on the part of one or more senior employees of IDS.

76.    On March 26, 2007, a NACHA panel determined that BOH's Affidavit submitted in support of the returns did not comply with the technical rule requirements for a Statement.

77.    The NACHA panel did not address whether BOG breached its warranties to BOH; the sole issue addressed by the NACHA panel was the matter of BOH's technical compliance with the return code rule requirements of the NACHA Rules.

78.    BOH was entitled to return the Relevant ACH Transactions, under, *inter alia*, the warranty and indemnification provisions set forth in Section 2.2 of the ACH Rules, notwithstanding any technical deficiency in the returns.

### FIRST CAUSE OF ACTION
### (Breach of Warranty - IDS Transactions)

79.    The allegations of paragraphs 1-78 are repeated and realleged as if fully set forth herein.

4815-5884-0321.1.010028-02707

80.     BOG, as the ODFI for the transactions at issue, provided representations and warranties to BOH as the RDFI, as described in paragraphs 28 through 31 above, in conjunction with the IDS Transactions.

81.     Some or all of the above-referenced representations and warranties given by BOG to BOH in conjunction with the IDS Transactions were false and, therefore, BOG breached its warranties to BOH.

82.     BOH performed all of its obligations under the ACH Rules, except for those it was excused from performing. BOG's breaches of warranty are independent of the issues related to BOH's right to return the IDS Transactions.

83.     BOH suffered injury or damages as a result of BOG's breaches of its warranties to BOH.

84.     Therefore, BOH is entitled to declaratory relief and/or a judgment for damages for breach of warranty against BOG, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Breach of Warranty - DeWitt Transaction)

85.     The allegations of paragraphs 1-84 are repeated and realleged as if fully set forth herein.

86.     BOG, as the ODFI for the transactions at issue, provided representations and warranties to BOH as the RDFI, as described in paragraphs 28 through 31 above, in conjunction with the DeWitt Transaction.

87.     Some or all of the above-referenced representations and warranties given by BOG to BOH in conjunction with the DeWitt Transaction were false and, therefore, BOG breached its warranties to BOH.

Page 13 of 22

88. BOH performed all of its obligations under the ACH Rules, except for those it was excused from performing. BOG's breaches of warranty are independent of the issues related to BOH's right to return the DeWitt Transaction.

89. BOH suffered injury or damages as a result of BOG's breaches of its warranties to BOH.

90. Therefore, BOH is entitled to declaratory relief and/or a judgment for damages for breach of warranty against BOG, in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### (Breach of Warranty - GHH Transactions)

91. The allegations of paragraphs 1-90 are repeated and realleged as if fully set forth herein.

92. BOG, as the ODFI for the transactions at issue, provided representations and warranties to BOH as the RDFI, as described in paragraphs 28 through 31 above, in conjunction with the GHH Transactions.

93. Some or all of the above-referenced representations and warranties given by BOG to BOH in conjunction with the GHH Transactions were false and, therefore, BOG breached its warranties to BOH.

94. BOH performed all of its obligations under the ACH Rules, except for those it was excused from performing. BOG's breaches of warranty are independent of the issues related to BOH's right to return the GHH Transactions.

95. BOH suffered injury or damages as a result of BOG's breach of its warranties to BOH.

96. Therefore, BOH is entitled to declaratory relief and/or a judgment for damages for breach of warranty against BOG, in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### (Breach of Contract - IDS Transactions)

97.    The allegations of paragraphs 1-96 are repeated and realleged as if fully set forth herein.

98.    Through their mutual agreements made pursuant to the ACH Rules, BOH and BOG's relationship is contractual.

99.    BOG expressly or impliedly agreed to the terms described in paragraphs 22 through 26 above.

100.    In conjunction with the IDS Transactions, BOG breached some or all of its agreements set for in paragraphs 22 through 26 above.

101.    BOH performed all of its contractual obligations under its agreements made pursuant to the ACH Rules, except for those it was excused from performing.

102.    BOH suffered injury or damages as a result of BOG's breaches of its agreements.

103.    Therefore, BOH is entitled to declaratory relief and/or a judgment for breach of contract against BOG, in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### (Breach of Contract - DeWitt Transaction)

104.    The allegations of paragraphs 1-103 are repeated and realleged as if fully set forth herein.

105.    Through their mutual agreements made pursuant to the ACH Rules, BOH and BOG's relationship is contractual.

106.    BOG expressly or impliedly agreed to the terms described in paragraphs 22 through 26 above.

Page 15 of 22

107.    In conjunction with the DeWitt Transaction, BOG breached some or all of its agreements set for in paragraphs 22 through 26 above.

108.    BOH performed all of its contractual obligations under its agreements made pursuant to the ACH Rules, except for those it was excused from performing.

109.    BOH suffered injury or damages as a result of BOG's breaches of its agreements.

110.    Therefore, BOH is entitled to declaratory relief and/or a judgment for breach of contract against BOG, in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
### (Breach of Contract - GHH Transactions)

111.    The allegations of paragraphs 1-110 are repeated and realleged as if fully set forth herein.

112.    Through their mutual agreements made pursuant to the ACH Rules, BOH and BOG's relationship is contractual.

113.    BOG expressly or impliedly agreed to the terms described in paragraphs 22 through 26 above.

114.    In conjunction with the GHH Transactions, BOG breached some or all of its agreements set for in paragraphs 22 through 26 above.

115.    BOH performed all of its contractual obligations under its agreements made pursuant to the ACH Rules, except for those it was excused from performing.

116.    BOH suffered injury or damages as a result of BOG's breaches of its agreements.

117.    Therefore, BOH is entitled to declaratory relief and/or a judgment for breach of contract against BOG, in an amount to be proven at trial.

4815-5884-0321.1.010028-02707

## SEVENTH CAUSE OF ACTION
### (Negligent Misrepresentation - IDS Transactions)

118.   The allegations of paragraphs 1-117 are repeated and realleged as if fully set forth herein.

119.   BOG knew or, given its prior investigations, should have been aware that individuals acting through IDS were using the ACH system to perpetrate a check kiting scheme, yet BOG allowed IDS to continue to originate ACH debits through its system.

120.   BOG, in the course of its business as an ODFI, failed to exercise reasonable care or competence in representing the material facts that its ODFI warranties were true and that the IDS Transactions were properly authorized, not fraudulent, and in compliance with the ACH Rules. BOH knew that BOH would rely on such representations in its role as RDFI.

121.   BOH justifiably relied on the misrepresentations by BOG.

122.   As a result, BOH suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Negligent Misrepresentation - DeWitt Transaction)

123.   The allegations of paragraphs 1-122 are repeated and realleged as if fully set forth herein.

124.   BOG knew, or given its prior investigations should have been aware, that individuals acting through IDS were using the ACH system to perpetrate a check kiting scheme, yet BOG allowed IDS to continue to originate ACH debits through its system.

125.   BOG, in the course of its business as an ODFI, failed to exercise reasonable care or competence in representing the material facts that its ODFI warranties were true, and that the DeWitt Transaction was properly authorized, not fraudulent, and in compliance

4815-5884-0321.1 010028-02707

with the ACH Rules. BOG knew that BOH would rely on such representations in its role as RDFI.

126. BOH justifiably relied on the misrepresentations by BOG.

127. As a result, BOH suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Negligent Misrepresentation - GHH Transactions)

128. The allegations of paragraphs 1-127 are repeated and realleged as if fully set forth herein.

129. BOG knew, or should have known, that individuals acting through IDS were using the ACH system to perpetrate a check kiting scheme, yet BOG allowed IDS to continue to originate ACH debits through its system.

130. BOG, in the course of its business as an ODFI, failed to exercise reasonable care or competence in representing the material facts that its ODFI warranties were true, that the GHH Transactions were properly authorized, not fraudulent, and in compliance with the ACH Rules. BOG knew that BOH would rely on such representations in its role as RDFI.

131. BOH justifiably relied on the misrepresentations by BOG.

132. As a result, BOH suffered damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Fraud, Nondisclosure, Intentional Misrepresentation - IDS Transactions)

133. The allegations of paragraphs 1-132 are repeated and realleged as if fully set forth herein.

134. At the time of the IDS Transactions, BOG knew or, given its prior investigations, should have been aware that individuals acting through IDS were using the ACH system to perpetrate a kiting scheme; yet BOG nonetheless allowed IDS to originate the IDS

Transactions through its ACH system and maintained its ODFI representations and warranties described in paragraphs 28 through 31 above, notwithstanding its knowledge and/or reckless disregard of the truth or falsity of some or all of its ODFI warranties.

135.    BOG knowingly or with extreme departure from the standards of ordinary care misrepresented material facts and/or failed to disclose to BOH facts that BOG knew would justifiably induce BOH to act or refrain from acting in the IDS Transactions and BOG was under a duty to exercise reasonable care to disclose such facts to BOH.

136.    As an ODFI, BOG intended to induce reliance by BOH on its ODFI warranties and representations.

137.    BOH, as an RDFI, justifiably relied on the warranties and representations by BOG.

138.    As a result, BOH suffered damages in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION
### (Fraud, Nondisclosure, Intentional Misrepresentation - DeWitt Transaction)

139.    The allegations of paragraphs 1-138 are repeated and realleged as if fully set forth herein.

140.    At the time of the DeWitt Transaction, BOG knew that individuals acting through IDS were using the ACH system to perpetrate a kiting scheme; yet BOG nonetheless allowed IDS to originate the DeWitt Transaction through its ACH system and maintained its ODFI representations and warranties described in paragraphs 28 through 31 above, notwithstanding its knowledge and/or reckless disregard of the truth or falsity of some or all of its ODFI warranties.

141.    BOG knowingly or with extreme departure from the standards of ordinary care misrepresented material facts and/or failed to disclose to BOH facts that BOG knew would

Case 1:07-cv-00007    Document 26    Filed 07/26/2007    Page 19 of 23

justifiably induce BOH to act or refrain from acting in the DeWitt Transaction and BOG was under a duty to exercise reasonable care to disclose such facts to BOH.

142.    As an ODFI, BOG intended to induce reliance by BOH on its ODFI warranties and representations.

143.    BOH, as an RDFI, justifiably relied on the warranties and representations by BOG.

144.    As a result, BOH suffered damages in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION
### (Fraud, Nondisclosure, Intentional Misrepresentation - GHH Transactions)

145.    The allegations of paragraphs 1-144 are repeated and realleged as if fully set forth herein.

146.    At the time of the GHH Transactions, BOG knew that individuals acting through IDS were using the ACH system to perpetrate a kiting scheme; yet BOG nonetheless allowed IDS to originate the GHH Transactions through its ACH system and maintained its ODFI representations and warranties described in paragraphs 28 through 31 above, notwithstanding its knowledge and/or reckless disregard of the truth or falsity of some or all of its ODFI warranties.

147.    BOG knowingly or with extreme departure from the standards of ordinary care misrepresented material facts and/or failed to disclose to BOH facts that BOG knew would justifiably induce BOH to act or refrain from acting in the GHH Transactions and BOG was under a duty to exercise reasonable care to disclose such facts to BOH.

148.    As an ODFI, BOG intended to induce reliance by BOH on its ODFI warranties and representations.

4815-5884-0321.1 019028-02707

149.    BOH, as an RDFI, justifiably relied on the warranties and representations by BOG.

150.    As a result, BOH suffered damages in an amount to be determined at trial.

## THIRTEENTH CAUSE OF ACTION
### (Indemnity)

151.    The allegations of paragraphs 1-150 are repeated and realleged as if fully set forth herein.

152.    As a result of BOG's conduct, BOH has had to incur significant expenses in investigating the Relevant ACH Transactions and addressing BOG's efforts to frustrate the return of the transactions, including attorneys' fees and costs, resulting both directly and indirectly from BOG's breach of warranty and refusal to accept return of the Relevant ACH Transactions, as articulated herein.

153.    BOG, as ODFI, bears the burden of these expenses under the indemnity provisions of the ACH Rules, which require BOG to indemnify BOH "from and against any and all resulting claim, demand, loss, liability, or expense, including attorneys' fees and costs, resulting directly from the breach of these warranties." ACH Rules, Subsections 2.2.3 and 2.8.3.11.

154.    Therefore, BOH is entitled to declaratory relief and/or a judgment for damages, in an amount to be proven at trial.

WHEREFORE BOH prays that, after due proceedings are had, there be judgment in its favor and against BOG as follows:

A.    For entry of declaratory judgment that BOH was entitled to return all Relevant ACH Transactions under the warranty and indemnification provisions, other express and/or

4815-5884-0321.1 010028-02707

implied agreements, and under the policies established in the ACH Rules and Guidelines and in the ACH banking industry or trade;

B.    For general, compensatory and punitive damages stemming from BOG's wrongful acts of oppression, fraud, malice and bad faith, including expenses BOH has incurred as a result of BOG's wrongful conduct, in an amount to be shown at the time of trial;

C.    For BOH's attorneys' fees and costs of this suit;

D.    For such other and further relief as this Court may deem appropriate.

DATED: Hagåtña, Guam, July 25, 2007.

Elyze r melor

KATHERINE G. LEONARD
MEREDITH M. SAYRE
ELYZE J. MCDONALD

Attorneys for Defendant
BANK OF HAWAII

4815-5884-0321.1.010028-02707

## DECLARATION OF SERVICE

I, Elyze J. McDonald, hereby declare under penalty of perjury of the laws of the United States, that on July 25, 2007, I caused to be served, via hand delivery, a true and correct copy of COUNTERCLAIMANT BANK OF HAWAII'S COUNTERCLAIM upon Plaintiff's counsel of record as follows:

        ANITA P. ARRIOLA, ESQ.
        JOAQUIN C. ARRIOLA, ESQ.
        MARK E. COWAN, ESQ.
        Arriola, Cowan & Arriola
        259 Martyr Street, Suite 201
        Hagåtña, Guam 96910

        Attorneys for Plaintiff
        BANK OF GUAM

Executed this 25th day of July, 2007 at Hagåtña, Guam.

                                      *Elyze J. McDonald*
                                ELYZE J. MCDONALD

4815-5884-0321.1 010028-02707